**Matter of PARAMOUNT MERRICK, Inc., Bankrupt.**

**Benjamin Finkel and Samuel L. Nadler, copartners as Finkel & Nadler, Appellants,**

**David Strauss & Co., Inc., Appellant.**

**No. 139, Docket 24782.**

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1958.

Decided Feb. 14, 1958.

Benjamin Finkel and Samuel L. Nadler, New York City, pro se.

Sam H. Lipson, New York City, for appellant David Strauss & Co., Inc.

Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

This appeal is prosecuted by the attorneys of the receiver of the involuntary bankrupt Paramount Merrick, Inc., and by the auctioneer who liquidated the inventory and fixtures of the bankrupt through public auction. Both attack the adequacy of the compensation recommended by Referee Sherman D. Warner in his report of June 21, 1957 and adopted by Judge Inch, Eastern District of New York, in his final order discharging the bankrupt on July 8, 1957. The attorneys, Finkel and Nadler, object to an award of $500 upon an application for an allowance of $3,500. The auctioneer, David Strauss & Co., Inc., appeals from an order reducing its commission from $2,904.18 to $1,645.38. We find no error in the rulings of the Bankruptcy Court and accordingly we affirm its orders.

### The auctioneer's claim

The bankrupt, operator of three grocery supermarkets at three different locations, Levittown, Merrick and North Merrick, Long Island, made an assignment for the benefit of creditors on August 13, 1956. Under the assignment the appellant auctioneer conducted auction sales at two of the locations, but the filing of an involuntary petition in bankruptcy on August 22 intervened before the sale of fixtures in North Merrick and of fixtures and merchandise in Levittown. These sales were subsequently conducted by this auctioneer under the auspices of the assignee by express consent of the receiver pursuant to an order of the Bankruptcy Court.

The gross receipts from the sale of merchandise and fixtures from the three

locations amounted to $49,846.08. In computing its commissions the auctioneer followed what is asserted to be normal practice in the state courts, charging 10% on the sales conducted during the period of assignment, or $1,798.28 on sales aggregating $17,982.83. On the $31,863.25 representing sales subsequent to the filing of the involuntary petition, the auctioneer deducted commissions computed pursuant to Bankruptcy Rule 13 of the Eastern District of New York. The application of this bankruptcy rule, granting 6% on the first $5,000 and 3% on the excess, gave commissions on this sale of $1,105.90, and the auctioneer accordingly deducted total commissions of $2,904.18. The referee recommended that commissions on the whole $49,846.08 be calculated pursuant to Rule 13, and Judge Inch, adopting this recommendation, granted $1,645.38. Hence he ordered the auctioneer to refund $1,258.80 and from this ruling the auctioneer appeals.

The services of the auctioneer entailed the lotting of a diversified inventory at three different locations, the separation of the inventory into lots of similar items allegedly taking 135 man days. These labor charges were previously compensated. The listing of the lots and fixtures covers 27 pages. The disposition of these items required sales on three different days at different locations.

■ The auctioneer's commission covers sales during the assignment and after the filing of the bankruptcy petition, Bankruptcy Rule 13 of the Eastern District clearly being applicable to sales during the latter period. See General Order 45, 11 U.S.C.A. following section 53. Compensation for the services during the earlier period, however, rests on other principles and is not subject to the Rule. Rather, it flows from the equitable principle that services beneficial

to the fund brought into the bankruptcy court should be compensated out of the fund so benefited. Randolph v. Scruggs, 1903, 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165; In re Cohen, 2 Cir., 1933, 64 F.2d 103.

■ The auctioneer argues that a 10% commission is normally allowed in the New York state courts on auction sales during assignment and that since this charge was fair and reasonable it ought to stand, citing In re Glomar Hat Corporation, Bankruptcy No. 75757 (S. D.N.Y. 1940). But it is clear that the determination of the assignee's allowable expenses within four months of bankruptcy is a matter for the bankruptcy court and state practice is not controlling. In re Cohen, supra; 11 U.S.C.A. § 11 sub. a(21).

■ The assignee had paid nothing to the auctioneer. This is not an attempt to surcharge the assignee for improperly excessive expenses, with the Bankruptcy Court reviewing the reasonableness of the assignee's prior disbursements. Here the referee and the Court were called upon to use their own independent judgment in setting a reasonable compensation.[1] Unless we are prepared to say that the use of Rule 13 by the referee and Bankruptcy Court as a measure of reasonable compensation was clearly erroneous and that the determination was unreasonable and wholly inadequate, we must affirm the order below. 11 U.S.C.A. § 47; General Order 36, 11 U.S.C.A. following section 53. Rule 13, making express reference to the fact that there is no official auctioneer in the Eastern District, sets up a scale of compensation for bankruptcy auctions considerably below the requested charge. By statute, New York has limited auction fees, except in New York and Kings County, to 2½% in the absence of a

1. The referee and Bankruptcy Court in effect surcharged the auctioneer by setting compensation at a lesser amount than that withheld by the auctioneer when he turned over the gross receipts to the assignee for transmittal to the receiver and by requiring that the differ- ence be refunded. It is clear that the question before the referee and Bankruptcy Court was that of compensation in the first instance, not the question of whether the commissions withheld were within the bounds of propriety.

written agreement to the contrary. General Business Law, § 21. Further, the New York courts seem to view 10% fees, presumably on sales in the excepted counties or pursuant to written agreement not as a necessary minimum but as compensation they are willing to approve. See Matter of Moskowitz, D.C. E.D.N.Y.1938, 25 F.Supp. 341. We do not feel that the determination of reasonable compensation was shown to be clearly erroneous.

### The attorneys' claim

The attorneys, Finkel and Nadler, complain that the fee of $500 awarded by the Bankruptcy Court is unreasonably low. In support of this contention they refer to their application for an allowance of $3,500. There they swear that they performed a variety of services for the benefit of the estate, including obtaining permission to continue the assignee sales and attending both sales subsequent to the filing of the bankruptcy petition, the procurement of a favorable bulk bid on the fixtures at Levittown, the negotiation of two landlord use and occupation claims arising out of the bankrupt's occupancy of stores at two sites, negotiations involving six secured claims, the preparation of papers, conducting of an examination of the bankrupt's president, attendance at a creditors' meeting, and the answering of "innumerable inquiries" of creditors during the period from August 23, 1956 to November 14, 1956. The attorneys contend that the continuance of the sales saved the estate approximately $1,680, that the Levittown bulk bid netted an additional $9,000, that their adjustment of landlord claims saved $784.29, and that successful rejection of a secured creditor's claim for counsel fees effected a saving of $900. They thus claim that over $12,000 of the $19,511 net value of the estate was due to their efforts. Unsecured claims total approximately $62,000. Appellants aver that $500 does not cover clerical and stenographic expenses.

■ The attorney for the receiver is entitled to reasonable compensation for his services during the period of receivership by virtue of the Bankruptcy Act, 11 U.S.C.A. §§ 102, 104, sub. a(1). The principal factors which enter into a determination of what is reasonable are the time spent, the intricacy of the questions involved, the size of the estate, the opposition encountered, the results obtained and the "economic spirit" of the Bankruptcy Act to curtail unnecessary expenses. Levin v. Barker, 8 Cir., 1941, 122 F.2d 969, certiorari denied 315 U.S. 813, 62 S.Ct. 799, 86 L.Ed. 1212.

■ The attorneys' services were considered by the referee. He was best able to pass upon their worth to the estate and his determination was accepted by the Bankruptcy Court. Although we have jurisdiction to review the compensation, 11 U.S.C.A. § 47, we are reluctant to overturn the determination unless it can be shown that the allowance was arbitrary and unreasonable. See Silver v. Rosenberg, 2 Cir., 1944, 139 F.2d 1020; In re Ernst, 2 Cir., 1939, 107 F.2d 760; 3 Collier, Bankruptcy, § 62.12, pp. 1483–1485 (14th Ed. 1941). We will not normally substitute our judgment for that of the referee and the Bankruptcy Court, see Silver v. Rosenberg, supra; In re Valentine, D.C.Md.1956, 139 F. Supp. 576, and we are not persuaded that we should reject their determinations of the proper fees.

In recommending attorney's fees, the referee, with knowledge of the difficulties encountered during the course of the bankruptcy proceedings, made a judgment based on various factors. In many instances, the application for allowance before us presents no more than a vague summary of the services rendered. We know little of the extent of the negotiations and obstacles overcome; we know nothing of the total amount of time devoted by the attorneys to the case during the period of receivership, an item of some significance. See Hammer v. Tuffy, 2 Cir., 1944, 145 F.2d 477. We are informed that the dividend accruing to unsecured creditors will be less than 30%, an amount which hardly permits gen-

erous fees. See Rosenberg v. United States, 2 Cir., 1957, 242 F.2d 141.

We cannot say on this record that the rulings of the referee and the Bankruptcy Court with reference to these allowances were clearly erroneous rulings.

Affirmed.