In the Matter of **MABSON LUMBER CO., Inc.**

**No. 343, Docket 31856.**

United States Court of Appeals
Second Circuit.

Argued March 19, 1968.

Decided April 26, 1968.

Lauren D. Rachlin, Rachlin & Rachlin, Buffalo, N. Y., for appellant.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and CLARIE, District Judge.*

FRIENDLY, Circuit Judge:

Lauren D. Rachlin, attorney for the trustee in bankruptcy of a retail lumber firm in the Western District of New York, requested $3,815 compensation for services to the bankrupt estate, and appeals from the referee's allowance of only $1,500, which the district court confirmed. He asserts that he devoted 74 hours to preparing the sale of some real estate (12 hours of which were spent in locating a buyer), 15 hours to endeavoring to collect accounts receivable (though his legal expertise concededly was re-

---

* Of the District Court of Connecticut, sitting by designation.

quired for only half of this time),[1] 11½ hours to examining the bankrupt's books, records and officers (which he conceded not to require legal training), and 8¾ hours to miscellaneous matters (2¼ of which were not specifically legal work). He computed his requested fee by multiplying this total of 109 hours by his "customary" time charge of $35 per hour. Chief Judge Henderson, in confirming the referee's award, noted that

> "A review of the petition of the attorney for the trustee indicates that counsel here also undertook general management of the estate and that while much of his effort may have required the exercise of sound judgment, it did not require his legal expertise,"

and "found the present allowance reasonable for legal services performed."

██ The referee and the judge were clearly correct in denying compensation for services which did not require legal expertise. The Bankruptcy Act, § 47, contemplates that it is the trustees who shall "collect and reduce to money the property of the estates for which they are trustees" and "examine the bankrupts"; and § 48 sets the maximum allowance the trustees may receive for these services. While General Order 44 permits the bankruptcy court to author-ize the trustee to employ an attorney where it is satisfied "that his employment would be to the best interests of the estate," General Order 42 ensures that the mandate of § 72 be respected by providing that "No allowance of compensation shall be made to any attorney for a * * * trustee * * * except for professional services."[2] Indeed, in a similar case decided by this court thirty-seven years ago, in which the attorney also requested compensation "for arranging for the sale of the assets, * * * collecting accounts due, * * * examining the bankrupt's papers, and more of the sort," Judge Learned Hand went out of his way to dispel "the curious notion," apparently widespread then too, "that an attorney may recover for what are not legal services at all." He pointed out that except for this notion "it would seem scarcely necessary to say that the receiver or trustee, and he alone, can recover for services in collecting the estate," and that while the line between legal and non-legal services "is not always easy to draw, * * * it is there, and referees should draw it straitly, else the estate will be burdened with a duplication of charges." In re Eureka Upholstering Co., Inc., 48 F.2d 95, 96 (2 Cir. 1931).[3] See Connelly v. Hancock, Dorr, Ryan & Shove, 195 F.2d 864, 869 (2 Cir. 1952).

1. The accounts he collected without litigation yielded about $500; those whose collection required litigation apparently yielded even less.

2. The Report of the Proceedings of the Judicial Conference of the United States held on March 30–31, 1967 noted at p. 34 that the Committee on Bankruptcy Administration

    "recommended that General Orders 42 and 44 be closely observed and no attorney's fee be allowed without an appropriate and detailed fee application which should include professional duties only and should never be based on duties properly performed by a trustee, receiver or other non-professional officer."

3. Since § 72 of the Act as amended in 1938 limits the trustee's compensation only for services *required* of him, see In re Ira Haupt & Co., 361 F.2d 164, 166 (2 Cir. 1966), some districts have sought to produce somewhat larger individual compensation without burdening the estate, and also to avoid line-drawing problems, by appointing trustees who are also lawyers as attorneys *pro se* upon proper petition under General Order 44. See Proceedings of Third Seminar for Referees in Bankruptcy 13 (1966); 3 Collier on Bankruptcy § 62.12; 4A id. § 72.01. This procedure would seem acceptable and even desirable in the case of small or medium sized estates heading for liquidation, since there is little reason why two people should have to familiarize themselves with the relevant facts at the estate's expense. Clearly, for example, the six hours the attorney here spent communicating with the trustee would have been saved by a unitary administration.

Appellant argues that even if the non-legal work he performed was non-compensable,[4] he should still receive more than $20 per hour for the 76 hours he claims to have spent on purely legal matters. He buttresses this by pointing out that the Erie County Bar Association minimum fee schedule calls for $25 to $50 per hour for legal work, and contends that smaller allowances will tend to drive competent men out of bankruptcy practice.

■■ Attorneys' fees in bankruptcy liquidation are governed by "the economical spirit of the Bankruptcy Act," and the amounts which "private clients are expected and wont to pay for similar services" are not determinative. See 3 Collier on Bankruptcy § 62.12, and cases cited therein at nn. 76 & 85. Rather, a "balance must be struck between two competing interests; that the cost of bankruptcy should not itself consume the very res the proceedings are designed to protect; and that fees allowed be such as not to discourage competent counsel from active and effective participation." Jacobowitz v. Double Seven Corp., 378 F.2d 405, 409 (9 Cir. 1967) (Merrill, J., dissenting). The referee, who is required by § 35(4) of the Act to reside and have his office in the district for which he is appointed, and the district judge, both directly engaged in supervising the administration of bankrupt estates, are in a better position than circuit judges, often in a distant city, to assess the supply curve of competent attorneys and strike the proper balance. See In re Paramount Merrick, Inc., 252 F.2d 482, 485 (2 Cir. 1958); General Order 47. Moreover, an attorney's compensation is a function not only of time spent but of other factors as well. We have often indicated our adherence to the generally accepted formula that the "principal factors which enter into a determination of what is reasonable are," in addition to "the time spent, the intricacy of the questions involved, the size of the estate, the opposition encountered, the results obtained and the 'economic spirit' of the Bankruptcy Act to curtail unnecessary expenses." In re Paramount Merrick, Inc., supra, 252 F.2d at 485.[5]

■■ We have no reason to doubt that the referee took these factors into account in determining the allowance for the services that were properly compensable. Although a somewhat higher allowance might have been warranted, courts of appeals are properly "reluctant," as we stated in In re Paramount Merrick, Inc., supra, "to overturn the determination" of the referee and the district judge "unless it can be shown that the allowance was arbitrary and unreasonable." The allowance amounts to 6.5% of the estate, only .6% less than the 1966 national average, see Administrative Office of the United States Courts, Division of Bankruptcy Administration, Tabulation of Costs of Administration 1966. While this would not be determinative if unusual services were involved, see Jacobowitz v. Double Seven Corp., 378 F.2d 405, 407 (9 Cir. 1967) (majority opinion), it provides some assurance that there was no unfairness in a case like this where the services required, while not insubstantial, were in no way extraordinary.

Judgment affirmed.

---

4. General Order 42 is a sufficient answer to the contention that this work, if not compensable at professional rates, is at least compensable at some lower rate.

5. In re Hudson & Manhattan Railroad Co., 339 F.2d 114 (2 Cir. 1964), and In re Wal-Feld Co., Inc., 345 F.2d 676 (2 Cir. 1965), hold that where a law firm provides a wide range of services for a trustee over a considerable period of time and ultimate payment is virtually assured, "time required" is a principal method of valuation and there is "no excuse for an established law firm to rely on estimates made on the eve of payment and almost entirely unsupported by daily records or for it to expect a court to do so." This does not mean, however, that even in these cases the referee should ignore the other factors mentioned above. See Herzog, Fees and Allowances in Bankruptcy, 36 Conn.Bar J. 374 (1962); ABA Canons of Professional Ethics, Canon 12.