**In the Matter of WESTEC CORPO-
RATION, Debtor.**

**No. 66–H–62.**

United States District Court,
S. D. Texas,
Houston Division.

June 1, 1970.

Andrews, Kurth, Campbell & Jones,
Seaborn Eastland, Jr., Houston, Tex.,
for trustee.

Baker, Botts, Shepherd & Coates, James G. Ulmer, Houston, Tex., for debtor.

Breed, Abbott & Morgan, Thomas W. Kelly, New York City, for Eastman Dillon, Union Securities.

Briscoe, Dally & Shaffer, Frank Briscoe, Houston, Tex., for Special Master.

Roth, Carlson, Kwit & Spengler, Robert S. Carlson, New York City, for trustee in New York cases.

Snell & Wilmer, Mark Wilmer, Shimmell, Hill & Bishop, John C. King, Moore, Romley, Kaplan, Robbins & Green, Marvin R. Kaplan, Phoenix, Ariz., for trustee in Arizona cases.

Anderson, Rush, Lowndes & Peirsol, Michael R. Walsh, Orlando, Fla., for trustee in Florida case.

Hutcheson, Taliaferro & Grundy, Thad Grundy and Thad T. Hutcheson, Houston, Tex., for Lloyd H. Smith, Rowles, Winston & Co., Inc. and Greenway Bank & Trust of Houston.

Kramer & Labaton, Edward Labaton and Ira Jay Sands, New York City, for Kramer & Labaton and Ira Jay Sands.

J. Kirk Windle and Joel A. Haber, Securities and Exchange Commission, Chicago, Ill., for the Securities and Exchange Commission.

HANNAY, District Judge.

## MEMORANDUM OPINION ON APPLICATION FOR COMPENSATION:

On September 26, 1966, in the United States District Court for the Southern District of Texas, Houston Division, a voluntary petition for reorganization under Chapter X of the Bankruptcy Act was filed in this Court by Westec Corporation ("Westec"). On September 27, 1966, Orville S. Carpenter was appointed as Trustee. On September 29, 1966, the law firm of Andrews, Kurth, Campbell & Jones was retained as counsel for the Trustee.

As of August 31, 1966, Westec stated assets at approximately $55,000,000 and liabilities at $22,000,000 on a consolidated basis. As a result of the Trustee's sale of properties, consisting of some 9 major transactions, the consolidated assets were reduced to $17,000,000 and consolidated liabilities to $8,000,000.

On April 4, 1968, the Trustee filed a plan of reorganization, and later on August 6, 1968, filed an amended plan. On September 16 and 17, 1968, hearings on the amended plan were held. The plan provided that the reorganized Westec would continue in operation and valued the reorganized company at between $14,000,000 and $15,000,000 (of which $2,000,000 represented potential tax savings from the tax loss carry over). Proceeds received from the sale of the major assets were in the amount of $17,300,000. The plan contemplated that the Trustee would turn over to the reorganized company $17,741,000 in assets and retain $7,472,000, from which all claims against the estate would be satisfied. The plan assumed, and the Court so found, that the Debtor was solvent and provision was made for the participation of all common and preferred shareholders not objected to by the Trustee. The plan also contained provisions for the payment of damages to those persons (denominated as Class 6 Creditors) who had suffered a loss as a result of the alleged stock manipulative activities of the Debtor and others associated with the Debtor prior to the reorganization proceedings.

On January 3, 1969, the S.E.C. filed its advisory report and though concluding that the plan as amended was fair and equitable and feasible, certain modifications and clarifications were suggested. On January 27, 1969, a revised plan was filed by the Trustee. Subsequently, on February 4, 1969, the S.E.C. filed a supplemental advisory report which concluded that the revised plan was fair and equitable and feasible. On February 28, 1969, the plan was approved by the Court, and on July 7, 1969, was substantially consummated.

After the reorganized company was readmitted to the American Stock Exchange, it began operating under its

own management and board of directors, substantially free from the control of the Court. The Trustee at that time had in his possession assets of $7,124,000, consisting of real estate, mining, and petroleum properties, valued at $4,581,000, approximately $700,000 in cash, and approximately $850,000 in funds due the Trustee, which the Trustee expected to collect shortly thereafter. There were outstanding against Westec contested claims and contingent liabilities of $585,200. The Trustee stated at that time that the cash available to him would be sufficient to pay all costs of administration without the necessity of selling any of the Arizona real estate properties which remained in his hands.

## INDIVIDUAL APPLICATIONS

*Orville S. Carpenter, Trustee*

■ On September 27, 1966, this Court appointed Orville S. Carpenter as Trustee for Westec Corporation in the reorganization proceeding under Chapter X of the Bankruptcy Act. The Trustee is a highly qualified executive, an expert accountant and a licensed attorney.

Immediately after his appointment, it was vitally necessary for him to arrange bank loans for several millions of dollars within a short time because the Debtor's state of affairs was dismal and chaotic. Had he not been able to make such loan arrangements, Westec in all probability would have immediately gone into ordinary bankruptcy which would have resulted in a complete loss to stockholders and a considerable loss to creditors. The Trustee immediately began a thorough investigation of the Debtor's operations and effected many procedures to increase productivity while reducing costs. He has demonstrated great ability in making sales of properties and, together with his financial advisor, has made many advantageous dispositions of assets. Soon after his appointment an attempt was made by a local attorney to form a committee allegedly for the protection of the stockholders, but the Trustee, uninvited, attended a meeting organized by the prospective promoter and persuaded him as well as those who were attending the meeting to discontinue their efforts in this regard, thereby saving stockholders large sums of money.

The Trustee showed unusual and extraordinary acumen in his decisions concerning which companies to dispose of and which to retain. This was particularly noticeable in his handling of the sale of Engineers & Fabricators, Inc., hereinafter called EFCO. When it became apparent that a serious loss would occur to the company because of management problems, the Trustee, after first receiving a bid of $3,500,000 for the sale of EFCO, which he declined, was later able to sell the company for $5,500,000. He was especially clever in the handling of the sale of Seacat. In conjunction with his financial advisor, he performed an outstanding service in handling dispositions of companies and assets no longer being developed, but whose monthly cost of maintenance remained extremely expensive. Among these were the "Orphan Mine" and the alleged mining properties in Colombia, South America. He also had many problems and decisions to make with regard to the retention of employees and with executory contracts. In fact, he was a one man board of directors and chief executive, and one on whom the Court could and did rely in perfect confidence, fully cognizant of his absolute integrity, remarkable ability and undivided loyalty.

Prior to his appointment in this case, the Trustee had for ten years been the President of Texas Eastern Gas Transmission Company.

The Trustee has been paid the amount of $5,000 per month for the 33 months from the time of his appointment until the time Westec was turned back to the stockholders. He makes no claim in a specific amount for additional compensation, leaving that matter entirely to the Court. The amount of compensation that he received during the Chapter X proceedings was $145,000. The S.E.C. has recommended a total fee of $250,000.

The Court is of the opinion that the Trustee should be regarded as performing the functions of a corporate executive and should thus be compensated on a scale which bears some reasonable relationship to the amount of compensation paid by similar corporate enterprises to their chief executives. That is to say, the compensation in such a case should not exceed the market value of similar executive services; yet, it may be trimmed down or reduced to take into account the ultimate losses sustained by creditors or stockholders.

For a solvent private corporation, the compensation paid for the services of the chief executive officer in the Court's considered opinion would be in the neighborhood of $200,000 per year. But, considering the fact that Westec was a sick company and unable to pay such going rate, the Court is of the opinion that the proper *total* compensation for the Trustee for the 33 month period that he served should be $400,000, (approximately $145,000 per year.) Since he has already been paid $145,000, the additional amount of Trustee's compensation for such 33 months should be and is hereby allowed in the sum of $255,000. The total fee recommended by the S.E.C. was $250,000, but everything considered, particularly the great benefits accruing to the creditors and the stockholders as a result of the Trustee's endeavors, the Court believes that a total fee of $400,000 is both fair and reasonable.

In short, the Court's considered opinion is that a better Trustee could not have been chosen.

*Eastman Dillon Union Securities, Financial Advisor*

■ On March 9, 1967, Eastman Dillon Union Securities, an investment banking firm, was, with the approval of the Court, engaged by the Trustee to act as his financial advisor. The Applicant served in that capacity for about 27 months. F. O'Neil Griffin was the partner in charge. He did not become a general partner until about March of 1968. Griffin and William A. Anderson of Eastman Dillon devoted almost all of their time to the service of Westec from the date of the appointment of Eastman Dillon by the Court through the remainder of the formal reorganization of the Debtor and until Westec was relisted on the American Stock Exchange. Other partners and associates in the Applicant's Division of Corporate Finance were also helpful in rendering services to Westec. Throughout most of this period, Griffin officed with the Trustee and working as a team they were extremely effective and valuable in their services to Westec. Generally speaking, the services performed by the Applicant included advice to the Trustee in all financial management matters affecting Westec, negotiations with third parties for the disposition of various assets of the estate, discovery of serious potential purchasers for properties of the estate that were for sale, settlement with various claimants in cases of attempted rescission, advice as to the plan of reorganization and assistance in the overall preparation of the plan.

In this connection, Applicant rendered extremely fine services in handling the claims for rescission of Chemetron Corporation and of Westec subsidiary companies, namely, Carey Machine & Supply Co., Test Equipment Corporation, Trak Microwave Corporation, Computer Systems, Inc., and Metric Systems Corporation.

Griffin was the principal witness as to the feasibility of the reorganization plan. He was then and is now a C.P.A. and has had splendid experience in the operation, management and financial needs of corporations. This experience, together with his natural talent, was most valuable to the Trustee in solving many of the problems that occurred during the process of reorganization.

Griffin also acted as bargaining agent for the Trustee. He appeared before the S.E.C. and the American Stock Exchange in financial matters concerning the handling of Westec common stock.

He was active and influential in originating buyer interest, negotiating terms and conditions of sale, soliciting and evaluating bids, and recommending their acceptance or rejection in many matters pertaining to sales of the assets of Westec.

Below is a listing of the subsidiaries or assets sold, the consideration received and, in the last column, the claim of the Applicant for what it represents to be the conventional fee or compensation ordinarily earned for services similar to those rendered by the Applicant.*

| Subsidiary or Asset Sold | Consideration | Fee |
|---|---|---|
| Camerina Oil & Gas, Ltd. (100% of Capital Stock) | $ 2,227,932.11 | $ 97,000 |
| Comerina Petroleum Corporation | | |
| (Canadian Properties) | 4,386,549.15 | 144,000 |
| (U. S. Properties) | . 700,000.00 | 35,000 |
| **Aberdeen Class B Stock and option on Class A Stock | 811,450.01 | 21,500 |
| Weco Petroleum Co. Inc. (All properties) | 350,000.00 | 17,500 |
| **The Matrix Corporation (18,000 share of common stock) | 346,000.00 | 4,725 |
| **The Great Northern Capital Corporation (229,428 Shares of common stock) | 315,907.00 | 13,764 |
| Engineers & Fabricators, Inc. (100% of the capital stock) | 5,546,300.00 | 155,000 |
| Orphan Mine (100% of assets) | 975,000.00 | 48,750 |
| Seacat-Zapata (100% of capital stock) | 866,000.00 | 43,300 |
| Pan Geo Atlas Corporation (100% of assets) | 6,779,500.00 | 167,525 |
| | $23,304,638.27 | 748,064 |

———◆———

The S.E.C. has recommended that an allowance not to exceed $250,000 would be fair compensation and thus, since the Applicant has received $160,064.52 in interim allowances, it should only be paid an additional amount of $89,935.48. With regard to the above-mentioned disposition of assets, the S.E.C. maintains that even if Applicant's percentage method of compensatory calculation were

* The normal fee is calculated as follows: 5% on the first $1,000,000; 4% on the second $1,000,000; 3% on the third $1,000,000; 2% on the fourth $1,000,000 and 1% thereafter.

** Fee calculated on the basis of a normal New York Stock Exchange commission.

applied the *total* sales should be considered rather than *each sale individually*, and accordingly demonstrates that if the rates currently proposed were applied to *total* sales, the "normal" charge would be $333,000 rather than the claimed $748,000.

However, the S.E.C. indicates that the fees payable to Applicant would be more properly determined if calculated on the basis of contribution to the entire reorganization under the standards of Chapter X, and additionally reiterates that the burden of demonstrating the reasonableness of a request for an allowance is upon the Applicant. The S.E.C. also notes that out-of-pocket expenses totaling $33,000 were paid by the estate, and that Griffin and Anderson used the offices and facilities of the estate, thereby relieving the Applicant of much related overhead cost. In conclusion, the S.E.C. recommends an allowance not to exceed $250,000, which they say would be fair and reasonable under the circumstances.

Regarding the possibility of Eastman Dillon's claim being barred under Section 249, I do not believe that this objection is meritorious and so hold.

The Court has been favorably impressed with the services of this applicant, particularly those of Griffin, whose unusual and extraordinary efforts were of tremendous financial benefit to the estate. For these and other abovementioned reasons, the Court is of the opinion that total compensation for Eastman Dillon should be allowed in the amount of $400,000, which after deducting $160,064.52 (previously paid), leaves a balance of $239,935.48, which the Court deems to be fair and reasonable and which is allowed.

*Legal Principles Applicable to Attorneys' Fees*

Because all of the applications hereinafter considered are either for attorneys' fees or in the nature thereof, it is well to review some of the legal principles announced in cases involving attorneys' fees in a similar context.

In Finn v. Childs Co., 2nd Cir., 181 F.2d 431, 435 (1950), Judge Clark correctly wrote:

The fixing of allowances has been called 'the most thankless and delicate task in all of the problems of judicial reorganization,' Frank, Epithetical Jurisprudence and the Work of the Securities and Exchange Commission in the Administration of Chapter X of the Bankruptcy Act, 18 N.Y.U.L.Q. Rev. 317, 349–50, 1941, and 'one of the most disagreeable and perplexing tasks which falls to the lot of a District Judge,' Silver v. Scullin Steel Co., 8 Cir., 98 F.2d 503, 506.

This Court is fully cognizant of and sympathetic with this viewpoint.

While an attorney is not entitled to charge a debtor corporation as much as he would a private litigant, the compensation should not be "so low as to preclude the more respected members of the bar from acting as bankruptcy officers." See: In the Matter of Garrett Road Corp., 256 F.Supp. 709, 716 (E.D. Pa. 1966).

Particular fees approved or awarded in other reorganization cases are not precedents to be considered binding. The amount of time spent is an important factor, but there are other factors that may and should be considered. The Court should deal justly with attorneys' fees, striving to reach a middle ground between generosity and parsimony. The Court is endowed with a great amount of discretion in fixing fees. See the Childs case supra. The standard applicable is *reasonableness*.

The S.E.C. has an advisory position in the setting of fees in a bankruptcy case. Although its recommendation is entitled to great weight, it has no power to veto, nor does it have the right to appeal a court ruling in this regard. In the case of In the Matter of Polycast Corporation, 289 F.Supp. 712, 722 (D. Conn., 1968), the court stated:

In making recommendations with respect to allowances, the role of the

SEC is unique and of inestimable value to the Court. While its function is purely advisory, its recommendations are those of about the only wholly disinterested party in the proceeding and are based on many, many years of experience in dealing with parties to corporate reorganizations as well as with the courts.

Although the SEC's recommendations as to allowances may not always be followed, the standard for judicial evaluation of such recommendations which commends itself to this Court is the standard suggested by the late Judge Charles E. Clark, namely, that the SEC's recommendations 'should not be exceeded without definite findings and conclusions showing why this step is deemed necessary'.[9]

9. Finn v. Childs Co., supra * * *.

In this connection, the Fifth Circuit, in the case of Campbell v. Green, 5th Cir., 112 F.2d 143, 144 (1940), declared that

The court, either trial or appellate, is itself an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value.

The factors to be considered in determining what are reasonable attorneys' fees have been written on a number of times. In the case of In re Osofsky, 50 F.2d 925, 927 (S.D.N.Y., 1931), Judge Woolsey listed

(1) The time which has fairly and properly to be used in dealing with the case; because this represents the amount of work necessary. (2) The quality of skill which the situation facing the attorney demanded. (3) The skill employed in meeting that situation. (4) The amount involved; because that determines the risk of the client and the commensurate responsibility of the lawyer. (5) The result of the case, because that determines the real benefit to the client. (6) The eminence of the lawyer at the bar, or in the specialty in which he may be practicing.

Each case, of course, differs to some extent from every other case in respect of the importance of these several elements.

Quoted in Sampsell v. Monell, 9th Cir., 162 F.2d 4, 6 (1947).

In In re Paramount Merrick, Inc., 252 F.2d 482, 485 (1958), the Second Circuit said that

■ The attorney for the receiver is entitled to reasonable compensation for his services during the period of receivership by virtue of the Bankruptcy Act, 11 U.S.C.A. §§ 102, 104, sub. a(1). The principal factors which enter into a determination of what is reasonable are the time spent, the intricacy of the questions involved, the size of the estate, the opposition encountered, the results obtained and the 'economic spirit' of the Bankruptcy Act to curtail unnecessary expenses. Levin v. Barker, 8 Cir. 1941, 122 F.2d 969, certiorari denied 315 U.S. 813, 62 S.Ct. 799, 86 L.Ed. 1212.

In the case of In re Yuba Consolidated Industries, Inc., 260 F.Supp. 930, 937 (N.D.Cal., 1966), the court set forth the factors on the question of attorneys' fees as follows:

■ The standards in measuring a reasonable fee may be succinctly set forth:

1. The time and labor required;

2. The novelty and difficulty of the questions involved;

3. The skill requisite properly to conduct the debtor's affairs;

4. The professional standing, reputation, and ability of counsel;

5. The customary charges of the Bar for similar services;

6. The amount involved in the controversy; and

7. The benefits resulting from the services.

Judge Simpson, speaking for the Fifth Circuit in the case of Massachusetts Mutual Life Insurance Company v. Brock, 5th Cir., 405 F.2d 429, 432 (1969) stated as follows:

> Our relation of the awards to an hourly basis is not to imply that the District Court purported to use the time involved as anything more than *one* factor to be considered in arriving at the amount of the fees to be awarded. The court considered as other factors the *complexity* of the problems involved and the *results obtained* by the trustee and his counsel.

> ▮ The District Court has a broad discretion in the award of fees. Calhoun v. Hertwig, 5 Cir., 1966, 363 F.2d 257; Campbell v. Green, 5 Cir., 1940, 112 F.2d 143. This discretion is not to be interfered with short of a showing that it has been *abused.* (Emphasis the Court's)

"There is, of course, no precise measure for reasonableness." Jacobowitz v. Double Seven Corporation, 9th Cir., 378 F.2d 405, 408 (1967).

*Andrews, Kurth, Campbell and Jones, General Counsel for Trustee*

▮ We next consider the application for attorneys' fees of the firm of Andrews, Kurth, Campbell and Jones for services rendered as general counsel for the Trustee. On September 29, 1966, the Applicant was retained as counsel for the Trustee and continued in that position until Westec Corporation was readmitted to the American Stock Exchange. The Applicant requests a total allowance of $650,000 for services rendered, which, less $116,000 previously paid as interim allowances, would leave a balance requested of $534,000. Applicant asserts that 18,040.51 hours of recorded time were devoted to the affairs of the estate of which 11,017.75 hours represented partners' time and 7,022.76 hours represented associates' time.

The services rendered by partners were performed primarily by Seaborn Eastland, Jr., Clinton F. Morse, James W. Dilworth and Raymond Cook. Most of the work of associates was done by Fred Knapp, Jr., and Bruce Harrington. The above named partners have much experience in corporate affairs with Morse being expert in Chapter X and bankruptcy proceedings.

As shown by Applicant's request for allowances and by the S.E.C. report, the services rendered by the firm in these proceedings can be divided into four categories: (1) services rendered to the Trustee in furtherance of the general business activities of the Debtor, or services in conjunction with the house counsel of the Debtor, Robert Moore; (2) services in connection with lawsuits and disputes affecting the Debtor, which include litigation and settlements of claims and objections filed in the proceeding; (3) services rendered in connection with the Trustee's Section 167 investigation, the filing of the Trustee's plenary suit against 93 defendants and the prosecution of the Digital Data Systems, Inc. alleging unfair competition; and (4) services rendered in connection with the reorganization of Westec and other phases of the Chapter X proceeding.

The amount claimed for services appears to be on purely a time or hourly basis and does not take into consideration all of the other factors mentioned above under the section entitled applicable legal principles. The Applicant advised the Trustee as to the legal problems in connection with the continuation of doing business. These services included: whether to accept or reject executory contracts, negotiation for the sale or purchase of assets of subsidiaries, tax matters, mortgage and real estate transactions, and general corporate matters. A large amount of time was spent in handling stock transaction procedures, which resulted in successful exchange of all outstanding shares of Westec, and subsequent return to the American Stock Exchange. In all these services, the Debtor's house counsel, Robert Moore, conferred with the firm

and imparted his knowledge to them which, no doubt, was of great assistance to Applicant and benefit to the estate.

The second category of services involved many hours of negotiation with creditors or contract purchasers of the Debtor in an effort to settle claims filed against the estate. These claims, such as that of Chemetron and the other creditors in Class 4 of the plan of reorganization, were settled, but only after many hours of negotiation. In addition, the complex settlement of Class 6 creditors was arranged and incorporated in the plan of reorganization.

The firm spent many months investigating the history of the affairs of the company and individuals connected therewith. In the investigative process, the Applicant examined witnesses and took testimony in many parts of the country. Such testimony aggregated more than 9,000 pages of transcript.

The plenary suit resulted from the investigation and the information obtained therefrom and the Trustee is hopeful that same will result in great financial benefit to the Debtor and Creditors.

The Applicant also handled all the local litigation and, in addition, supervised the activities of a number of specially employed counsel in various parts of the country. During the approximately 33 or 34 months of their appointment, Applicant prepared and filed some 424 pleadings.

In general, the services of Applicant were very effective and in fact were both unusual and extraordinary. These services were of great benefit to the estate. The S.E.C. recommended that the requested $650,000 be allowed as financial compensation for services rendered up to and including June 30, 1969. While the Court is convinced that their services were excellent, considering all the factors that are involved in a case of this kind, which have been set out under the heading of applicable legal principles, it is of the opinion and so holds that the total allowance for this applicant should be $600,000. This would result in the additional allowance of

$484,000 which together with the $116,000 already paid would amount to a total fee of $600,000. See: Massachusetts Mutual Life insurance Company v. Brock, supra.

*Baker, Botts, Shepherd & Coates*
Counsel for Debtor.

On October 31, 1966, an application was signed by an officer of Westec Corporation for the appointment of this Applicant as attorney for the Debtor. The order appointing said attorneys was signed on the same date.

 The services of Applicant consisted primarily of acquainting attorneys for the Trustee with the history and the status of some of the subsidiary companies of Westec. Applicant was familiar with this information by virtue of its representation of Westec for more than a year up until the time of the filing of the petition under Chapter X. The Chapter X application filed by Applicant was prepared in one day.

Since the Applicant was not eligible to represent the Trustee directly, 11 U.S. C.A. § 557, whether or not the Applicant was in all respects eligible to represent the Debtor is subject to some question. This indirect representation of the Trustee was discussed in In re Food Town, Inc., 208 F.Supp. 139, 150 (D.Md.1962), as follows:

> There is no serious question about the propriety of the recommended allowance of $3,500 for services rendered *up to* and *in connection with the filing of the petition*. Thereafter, much of the work for which an allowance is requested was work which should have been done by the attorney for the trustees. The SEC recommended that no compensation be allowed to the attorneys for the debtors for services rendered *after* the filing of the Chapter X petitions, on the grounds: first, that the attorneys for the debtors were not disinterested persons under sec. 158 of the Bankruptcy Act (11 U.S.C.A. § 558) *and could not qualify*

*as attorneys for the trustee* under sec. 157 (11 U.S.C.A. § 557) except for a *specified* purpose and only with the approval of the judge and therefore they should be denied compensation for services properly the function of the trustee or his counsel; * * *. (Emphasis added.)

Subsequent to its appointment, the Applicant did make a beneficial contribution directly contributing to and enhancing the reorganization of the estate. The Applicant has been paid by Westec, or the Trustee, the following amounts for work performed on the following dates, to-wit:

| Type of Work | Date | Amount |
| --- | --- | --- |
| Ordinary corporate work | 7/1/66–8/31/66 | $15,000 |
| Work on Columbian Mining Venture | | 8,250 |
| Work with Westec Board of Directors | 8/24/66–9/26/66 | 63,500 |
| | Total | $86,750 |

Applicant claims an additional amount of $69,500, making a total charge of $156,250. The S.E.C. has recommended a *total* payment to this Applicant of $80,000, which, if (as the S.E.C. apparently thought) only $63,500 had been paid would leave an additional $16,500 to be paid to Applicant.

However, as shown above, Applicant has already been paid $86,750, which is of course, in excess of the $80,000 recommended by the S.E.C. It should be noted that the information gained by Applicant from its work and research prior to September 27, 1966, unless passed on to the Trustee's attorney, was of no benefit to the estate. This Court is of the opinion that the Applicant has been amply compensated for its services to the Debtor, and thus, compensation in excess of $86,750 is expressly disallowed.

The expenses appear to be proper and are allowed in the sum of $6,858.07.

### Frank Briscoe, Special Master

 On May 18, 1967, the Court appointed Frank Briscoe as Special Master to conduct and preside over examinations taken by or on behalf of the Trustee. By reason of his integrity, skill and experience, Briscoe was preeminently qualified to handle this very difficult situation. Between May 25, 1967 and February 14, 1968, he spent some sixty days in conducting examinations, and in conferring and meeting with counsel. He has received an interim allowance of $15,000 and has requested additional compensation of $5,250. This total ($20,250) is based on an approximate figure of $350 per day. The S.E.C. has recommended that the $15,000 (approximately $250 per day) already paid is ample and that additional compensation is unwarranted.

For a number of years prior to his appointment Briscoe had been a hard working and hard hitting State District Attorney. He was especially well qualified for this position by reason of that fact and also because he had been a prosecutor in a number of court of inquiry matters, which resulted in the conviction of a probate judge of Harris County and a number of other individuals.

In addition to the factors already considered in deciding his compensation, there is the additional one that is recognized by the Code of Professional Responsibility of the American Bar Association, and that is:

* * * (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will *pre-*

*clude* other employment by the lawyer. (Emphasis added.)

In fact the Court is of the opinion that with the generally accepted recognition of Applicant's great ability as a trial lawyer one or more of the parties involved as defendants, either criminally or civilly, in matters arising out of the collapse of Westec would have employed Briscoe at a much larger fee than he is obtaining by virtue of his having acted as Special Master.

For the above reasons the Court is of the opinion that Briscoe is entitled to a total compensation of $20,250 (leaving a balance owing to him of $5,250), which figure the Court believes to be fair and reasonable.

Allowance should also be made for the fact that Applicant did bear his own office overhead as well as having paid most of his expenses. His application for reimbursement expenses of $193.00 is also allowed.

*Kramer & Labaton* and *Ira Jay Sands, Counsel for Class 6 Creditors*

■ The Applicants are attorneys in New York City, who represent four shareholders holding an aggregate of 950 shares of Westec common. They first appeared in this proceeding on September 16 and 17, 1968, for a hearing on Trustee's amended plan of reorganization. Their clients fell within that group of creditors denominated in the plan as Class 6 creditors and Applicants objected to the treatment thereof under the plan.

The objections made by the Applicants were that the plan was unfair in the following respects: (1) the limitation of $500,000 as the amount that should be distributed to the Class 6 creditors; (2) the cost basis for a creditor under Class 6 should be his average cost of Westec common as stated in the plan. Objection No. 1 resulted in a modification by the Court, pursuant to the recommendations of the Commission, providing for a *minimum* contribution of $500,000 to Class 6 creditors from any recoveries

had by the Trustee in the plenary suit with any amount in excess of the $500,-000 minimum to be determined by the reorganization court. The second objection, also supported by the Commission in its advisory report, was sustained by the Court and allowed Class 6 creditors to use as their cost basis their actual purchase price of Westec common.

Applicants request compensation in the amount of $25,000 as attorneys' fees and $708.62 as expenses. Their claim is premised primarily on the theory of benefits conferred rather than that of hours spent.

Applicants submit that the time necessarily devoted by them to this proceeding (exclusive of the time spent in the preparation of this application) was 197 hours. Of this, 21 hours were spent by Sidney Kramer, 121 hours by Edward Labaton, and 55 hours by Ira Jay Sands.

The Court is of the opinion that $10,000 is a fair and reasonable fee and that such should be allowed, to be divided between the three claimants as they may deem fit. The Court is also of the opinion that $708.62 represents proper expenses and that the Applicants should be reimbursed for this amount. The attorneys' fees and expenses should be paid out of the Class 6 Creditors' Fund.

*Lloyd H. Smith; Rowles, Winston & Co., Inc.; Greenway Bank & Trust of Houston*
*For allowance of Compensation*

Applicants are Class 6 creditors of Westec Corporation who own stock or have security interests in the stock of the Debtor. They have made application for allowances for services rendered by them in connection with their objections to approval and confirmation of the plan of reorganization of Westec and for services in submitting suggestions for amendments to the plan. It is maintained by them that their services contributed to the amendment and confirmation of the plan and were thus beneficial to the administration of the estate.

These and three other creditors were the only parties who, prior to the bar

date for the filing of creditor claims, filed proof of loss claims in connection with the alleged securities law violations of the Debtor. Their request for services performed is $50,000.

The events made the basis for the Applicants' claim begin with the September 26, 1966, filing of the Petition for Reorganization and extend through May 27, 1969, with the entry of an order directing transfer of properties and with aid in consummating the plan. Throughout the entire course of these proceedings the attorneys for Applicants, to-wit, Hutcheson, Taliaferro and Grundy, appeared at substantially all the hearings before this Court and participated in many of such hearings.

Applicants were the only parties who opposed the opening up of Class 6 to permit the filing of claims by all stockholders regardless of whether they had notice of the bar date from this Court.

Applicants allege that they have performed valuable and productive services in three categories mentioned in Section 243 of the Bankruptcy Act. These services are namely:

(1) Submission of suggestions for incorporation in the plan.

(2) Objections to confirmation of the plan.

(3) Beneficial assistance in administration of the estate.

Applicants objected to the plan of reorganization as not being fair and equitable because it violated the strict priority rule. The Court overruled their objections and two of the Applicants appealed from the order approving the plan. Shortly thereafter, the Applicants and the Trustee settled the controversy concerning the Trustee's objections to the individual Applicant's stock ownership or security interest, and the appeal was dismissed. The Trustee and the Applicants also reached an agreement regarding the reopening of the bar date for filing proofs of claim as Class 6 creditors. Thereafter, an agreement was reached whereby the time was extended to permit the filing of proofs of claim, but only for those without actual knowledge of the earlier bar date.

Applicants claim that they have paid their attorneys the sum of $42,418.30 for legal services on their behalf. The S.E.C. takes the position that Applicants are entitled to some compensation with reference to the bar date extension, but say that such compensation must be reasonable and is not governed by the amount they agreed to pay their counsel. The S.E.C. also says that payments for the services of counsel rendered in connection with validation of their claims of stock interest are not the responsibility of the estate. The Commission recommends that the fair and reasonable value of compensatory benefits conferred by the Applicants is $5,000. The S.E.C. recommends that payment of any sum to Applicants should not come out of the Fraud Claimants Fund for Class 6 creditors.

This Court is of the opinion and finds that the fair and reasonable amount of compensation for the Applicants is $10,000, to be paid to such Applicants jointly, subject to division as they may determine among themselves. It is further directed that such payment be made out of the Fraud Claimants Fund of Class 6 creditors.

*Anderson, Rush, Lowndes & Peirsol,*
*Special Counsel for Trustee*

 In July, 1967, a foreclosure action was brought against the Debtor in an effort to extinguish the Debtor's second mortgage interest on property located in Florida. On January 18, 1968, the Applicant was appointed by the Trustee, pursuant to a Court order, to act as special counsel in defending this lawsuit. As a result of their services, the foreclosure suit was stayed for the pendency of the reorganization proceeding.

Upon analysis by the Applicant, it was discovered that it would benefit the estate to buy the first mortgage interest on the property since there would exist a substantial equity for the Debtor. As a

result, negotiations were held and purchase of the first mortgage interest was completed.

Applicant requests a fee of $1,225 and expenses of $35.95 for 29 hours of service to the estate. The S.E.C. recommends that these fees and expenses be paid. The Court holds that the services were beneficial and reasonable, and are allowed as requested, to-wit: fees in the amount of $1,225 and expenses of $35.-95.

### Shimmel, Hill & Bishop, Special Counsel for Trustee

■ Prior to the reorganization proceedings, the Debtor had entered into a joint venture with Royal Properties, Inc., whereby Royal would operate the property and make payments to the Debtor under an agreement. After the reorganization proceedings commenced it was discovered that Royal had failed to fulfill its agreement, forcing the estate to put up funds so that the property would not be foreclosed. Applicant was retained as special counsel for the Trustee by Court order dated October 31, 1966, for the purpose of bringing suit against Royal. In settlement of the claim, Royal conveyed its interest in the particular property to the Debtor, leaving the Debtor as the sole owner of the property.

As a result of Applicant's services, foreclosure was prevented and the estate was benefitted. Applicant claims $920 in fees and $4 in expenses for 24 hours of services and the successful completion thereof. The S.E.C. recommends that the fees and expenses aforesaid be allowed since in their opinion the same are fair and reasonable. The Court is of the opinion that such fees and expenses are fair and reasonable and are allowed as requested.

### Moore, Romley, Kaplan, Robbins & Green, Special Counsel for Trustee

■ The Applicant was retained by the Debtor prior to the commencement of the reorganization proceedings to recover $17,500 in real estate commissions owing to a subsidiary of the Debtor. Negotiations and pre-trial discovery were completed prior to the filing of the Chapter X petition. On April 23, 1968, the Trustee, pursuant to the Court order, retained the Applicant to litigate the estate's claim in this regard. Immediately prior to trial the Applicant was able to settle for the sum of $17,000, which settlement was subsequently approved by the reorganization court.

Applicant claims $3,500 in legal fees for 100 hours of services, and expenses in the sum of $367.98. The S.E.C. recommends that the fees and expenses be allowed. The Court agrees with the S. E.C. and finds that the services of Applicant were beneficial to the estate and are fair and reasonable.

### Roth, Carlson, Kwit & Spengler, Special Counsel for Trustee

■ Applicant was employed by the Trustee in October, 1966, pursuant to an order of the Court, to transfer ten actions brought against the Debtor and its officers and directors from New York City to the United States District Court for the Southern District of Texas, Houston Division. The Applicant successfully completed such assignment, spending approximately 70 hours thereon, and requests a fee of $5,000 and expenses of $231.

The above-mentioned transfers were necessary and beneficial to the estate since it was not feasible for Trustee's counsel to deal with the aforesaid lawsuits. The services, although rendered both to the estate and to the officers and directors of the Debtor, are compensable from the estate.

The S.E.C., however, believes that the $5,000 fee is excessive for the services performed. It recommends a final amount of $3,000. The Court accepts the advice of the S.E.C. as to the amount of fees, to-wit: $3,000, finds same to be fair and reasonable, and also

finds that the expenses are proper and should be allowed in the sum of $231.

*Snell & Wilmer,*
*Special Counsel for Trustee*

▌ In December, 1965, Applicant commenced its services for Westec Corporation. It continued after the Chapter X proceedings began. The Applicant has successfully handled litigation in Arizona relating to certain real estate interests of the Debtor. It was appointed special counsel for the Trustee in these matters on October 31, 1966.

Applicant's services have been of a highly technical nature, and have consisted of "unscrambling" of real estate transactions entered into by the Debtor prior to the reorganization proceedings from which suits have been brought against Westec. The litigation centered around three properties in Arizona, all of which have been adjudicated in favor of Westec. These services included litigation in state and federal courts, both trial and appellate. One of the claims against Westec which Applicant defended was for an alleged amount of $16 million. As a result of the services performed by Applicant, the estate has good title in Arizona property valued in excess of $3 million.

Applicant kept careful account of all of its legal services and furnished the Court with two large brief bags of its notes, briefs and so forth, which the Court carefully considered.

The Applicant claims that it has spent in excess of 322 hours for which it requests fees of $19,240 and expenses of $1,181.33. The Applicant has already received $3,230 in interim allowances and $205 in expenses.

The S.E.C. recommends that the Applicant be paid the amount of the allowances requested and also the expenses requested. The Court finds that same are fair and reasonable and are hereby allowed in the full sum requested. This means that the Applicant should be paid the balance as legal fees in the sum of $16,010 and expenses in the amount of $976.33.

It would be well to note that as to the allowance requests of Applicants Anderson, Rush, Lowndes & Peirsol; Shimmel, Hill & Bishop; Moore, Romley, Kaplan, Robbins & Green; and Snell & Wilmer, no one appeared in opposition to the S. E.C.'s recommendations, all of which were made in advance of the fee hearings.

*Method of Payment*

It is further ordered that the Trustee shall forthwith pay in cash the full amount of all of the foregoing allowances with the exception of the allowances to the Trustee; Andrews, Kurth, Campbell & Jones and Eastman Dillon, Union Securities & Co.; and with respect to the allowances to the Trustee; Andrews, Kurth, Campbell & Jones and Eastman Dillon, Union Securities & Co., the Trustee shall pay forthwith, proportionately and in cash, as much of such allowances as available cash permits, and the obligation to pay the balance of said allowances shall be evidenced˙ and secured by the Trustee's non-negotiable certificates of indebtedness, which shall be payable six (6) months from date of issue and shall bear interest at the rate of 8% per annum and shall be a general obligation of the Trustee but shall not be a lien on any specific assets of the Debtor held by the Trustee; and in order to provide funds for the retirement of such certificates of indebtedness, the Trustee be and he is hereby authorized, at such times and at such prices and terms as he deems appropriate, to sell assets subject to his administration in these proceedings, to sell Westec Corporation common shares held by him as Escrow Agent pursuant to orders entered in these proceedings approving settlements with all claimants to such stock if such claimants are not defendants in Civil Action No. 68–H–738, entitled Carpenter v. Hall, et al., 311 F.Supp. 1099, United States District Court for the Southern District of Texas, Houston

Division, and to direct Westec Corporation to sell and deliver the sale proceeds to the Trustee or otherwise distribute Westec Corporation common shares reserved under the Plan of Reorganization in these proceedings for the payment of administrative allowances.

APPENDIX

Summary of Requests, Recommendations and Allowances

| Applicant | Amount Requested | Amount Recommended by S.E.C. | Amount Allowed by the Court | Amount Previously Received | Net Balance Owing |
|---|---|---|---|---|---|
| Orville S. Carpenter, Trustee [1] | $145,000.00 | $250,000.00 | $400,000.00 | $145,000.00 | $255,000.00 |
| Eastman Dillon, Union Securities, Financial Advisor | $510,000.00 | 250,000.00 | 400,000.00 | 160,064.52 | 239,935.48 |
| Andrews, Kurth, Campbell & Jones, General Counsel for Trustee | 650,000.00 | 650,000.00 | 600,000.00 | 116,000.00 | 484,000.00 |
| Baker, Botts, Shepherd & Coates, Counsel for Debtor | 156,250.00 | 80,000.00 | 86,750.00 | 86,750.00 | -0- |
| Expenses | 6,858.07 | 6,858.07 | 6,858.07 | 4,000.00 | 2,858.07 |
| Frank Briscoe, Special Master | 20,250.00 | 15,000.00 | 20,250.00 | 15,000.00 | 5,250.00 |
| Expenses | 193.00 | 193.00 | 193.00 | 193.00 | -0- |
| Kramer & Labaton and Ira Jay Shields | 25,000.00 | 10,000.00 | 10,000.00 | -0- | 10,000.00 |
| Expenses | 708.62 | 708.62 | 708.62 | -0- | 708.62 |
| Lloyd H. Smith; Rowles, Winston & Co., Inc, Greenway Bank & Trust of Houston, Creditors | 50,000.00 | 5,000.00 | 10,000.00 | -0- | 10,000.00 |
| Anderson, Rush, Lowndes & Piersol, Special Counsel for Trustee | 1,225.00 | 1,225.00 | 1,225.00 | -0- | 1,225.00 |
| Expenses | 35.95 | 35.95 | 35.95 | -0- | 35.95 |
| Shimmel, Hill & Bishop, Special Counsel for Trustee | 920.00 | 920.00 | 920.00 | -0- | 920.00 |
| Expenses | 4.00 | 4.00 | 4.00 | -0- | 4.00 |
| Moore, Romley, Kaplan, Robbins & Green, Special Counsel for Trustee | 3,500.00 | 3,500.00 | 3,500.00 | -0- | 3,500.00 |
| Expenses | 367.98 | 367.98 | 367.98 | -0- | 367.98 |
| Roth, Carlson, Kwit & Spengler, Special Counsel for Trustee | 5,000.00 | 3,000.00 | 3,000.00 | -0- | 3,000.00 |
| Expenses | 231.00 | 231.00 | 231.00 | -0- | 231.00 |
| Snell & Wilmer, Special Counsel for Trustee | 19,240.00 | 19,240.00 | 19,240.00 | 3,230.00 | 16,010.00 |
| Expenses | 1,181.33 | 1,181.33 | 1,181.33 | 205.00 | 976.33 |
| Total fee [2] | $1,586,385.00 | $1,287,885.00 | $1,554,885.00 | $526,044.52 | $1,028,840.48 |
| Total expenses | 9,579.95 | 9,579.95 | 9,579.95 | 4,398.00 | 5,181.95 |

1. The Trustee has left to the discretion of the Court the specific amount of additional compensation he should receive.
2. Expenses were much higher, but were previously approved by the Court and paid.