## SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff,

v.

## CHARISMA SECURITIES CORPORATION, Defendant.

### No. 72 Civ. 981.

United States District Court,
S. D. New York.

Dec. 18, 1972.

values this time at not less than $100 per hour. His counsel have devoted 31 hours of a partner's time for which they request not less than $90 per hour and 115 hours of associates' time valued at not less than $45 per hour. These rates are said to be fair and reasonable under "present day economics in the practice of law in New York City."

For the reasons which follow, the applications are denied without prejudice to the right of the applicants to present requests for allowances of compensation upon the practical completion of the administration of the estate involved.

Theodore H. Focht, Gen. Counsel, Securities Investor Protection Corp., Michael E. Don, Washington, D. C., for plaintiff.

Edwin L. Gasperini, Trustee, pro se.

Gasperini, Koch & Savage, New York City, for trustee.

## OPINION

POLLACK, District Judge.

This is an application for an interim fee allowance to the Trustee and counsel for the Trustee serving in the liquidation of the broker-dealer business of Charisma Securities Corp. (Charisma) pursuant to the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa–78lll ("1970 Act"). The amount sought totals $8,075. The Trustee has devoted 35 hours to his activities and he

## I.

Upon the application of the Securities Investor Protection Corporation ("SIPC"), a non profit corporation created by the 1970 Act, this Court determined that the customers of Charisma were in need of the protection afforded by the 1970 Act and, on March 9, 1972, on the suggestion of SIPC, appointed Edward L. Gasperini, Esq., and Messrs. Gasperini, Koch and Savage, being persons specified by SIPC pursuant to § 5(b)(3) of the 1970 Act, 15 U.S.C. § 78eee(b)(3), as Trustee and attorneys for the Trustee, respectively. The SIPC application seeking their appointment stated that SIPC had been advised that the Trustee and his firm as counsel to the Trustee would make a joint fee request and that there would be participation within the firm in that fee—a procedure SIPC considered appropriate.

On May 5, 1972, this Court found the Trustee to be qualified and disinterested and his appointment was confirmed without opposition.

Since his appointment the Trustee has filed three Interim Reports (April 11, 1972; June 14, 1972; October 31, 1972), the last of which was accompanied by the instant Interim Fee Application. The progress they show in the liquidation of Charisma is the following.

In his first Interim Report the Trustee stated that he had engaged a firm of

certified public accountants to make an inventory of the assets and to contact customers and creditors of Charisma. The records of the firm in the possession of the SEC had been stolen from the offices of the SEC some months earlier. However, counsel and accountants identified approximately 800 names of persons and companies, some of whom might have been or were customers of Charisma. These persons were notified of the trusteeship and were sent a claim form and notice of hearing of any objections to the trustee's appointment. Pursuant to a Court Order directing all banks holding funds in the name of Charisma to pay such funds to the Trustee, $13.41 was recovered. Also located was some old office furniture, subsequently appraised at $92.50, being held by Charisma's landlord as security for unpaid rent. To date, these are the only assets of Charisma which the Trustee has been able to locate and secure.

In his second Interim Report the Trustee recited that his accountants had reported that Charisma had been involved in certain underwritings and counsel was directed to inquire into the status of these ventures. Also, that 59 customer forms had been returned to him, 26 of which reflected no claim against Charisma. The remaining 33 reflected various claims which were turned over to his accountants for evaluation. The Trustee reported the discovery of certain books and records of Charisma and identified therefrom the names of 45 possible creditors to whom creditor forms were mailed.

On October 31, 1972, the Trustee presented his third Interim Report together with the instant application for interim allowances for both himself and his counsel. This report recounts that the accountants had submitted their recommendations for the disposition of the customer claims filed prior to June 1, 1972. Acting thereon, the Trustee submitted and obtained a Court Order, with the approval of SIPC, providing for cash payments to customers of Charisma specified by the accountants, in the aggregate amount of $21,065.62. Funds to pay these customers were obtained from and advanced by SIPC under the 1970 Act. Section 6(f)(1) of the 1970 Act, 15 U.S.C. § 78fff(f)(1). The customers involved were notified of the availability of these funds for their claims and general releases were sent to them for execution. The accountants examined the remaining customer claims (apparently 13 in number) and reached the preliminary conclusion that all but four could be objected to. This Interim Report also makes mention that a brokerage account with a considerable balance had been located for Stephen Lee Adlman, the former chief officer of Charisma, on the basis of which the accountants were asked to prepare any available data that might indicate that Charisma's funds or securities had been taken by Adlman.

The net of the situation to date is this. After six months of the trusteeship, assets located and recovered by the Trustee total $105.91. The payment by SIPC of 20 customer claims aggregating $21,065.62 has been authorized by the Court. Seven claims aggregating $8,030 are pending before the Trustee as to which the accountants are awaiting further documentation. Also pending are two claims asserted in the amount of $26,150 as to which all necessary documentation has been received; however, because of their complexity, further analysis by the accountants is required thereof. Of the few remaining claims filed prior to June 1, 1972, the trustee's accountants recommend that he object to six claims aggregating $10,422.50. No report has yet been prepared by the accountants to cover the unspecified number of claims filed by customers after June 1, 1972, although one is promised. The Trustee claims that to date he had been unable to locate or trace the assets which Charisma should have had. In this vein, he has investigated the possibility of suit against the former chief officer of Charisma for misappropriation of funds and securities.

## II.

The 1970 Act had its genesis in the concern over the loss of public confidence in the brokerage industry due to its inability adequately to protect investors if the broker-dealer with whom they are doing business encounters financial troubles. In these circumstances public customers had sometimes encountered difficulty in obtaining their cash balances or securities from the broker-dealers. The legislation provided for the establishment of a fund to be used to make it possible for a public customer, in the event of the financial insolvency of his broker, to recover that to which he is entitled, with a limitation of $50,000 for each customer on the amounts to be provided by the fund. The existence of this fund was intended to reinforce the confidence that investors have in the United States securities markets and to strengthen the financial responsibilities of broker-dealers. H.R. Rep. No. 91–1613, 91st Cong., 2d Sess. 1–4 (1970).

Created by this legislation was the Securities Investor Protection Corporation (SIPC), a non profit, membership corporation, whose members consist of all registered brokers and dealers and members of national securities exchanges, with the exception of those whose exclusive business is distribution of shares of mutual funds or variable annuities. The function of SIPC is to administer this fund and take steps to protect the customers of any member in need thereof. If SIPC determines that any of its members has failed or is in danger thereof and a condition exists of insolvency or failure to comply with financial responsibility or hypothecation rules relative to customers' securities, then SIPC applies to the Court for an adjudication that the customers of such member are in need of the protections provided for by this legislation. If the debtor consents to or fails to contest the application, the Court is required to appoint for the debtor as trustee and as attorney for such trustee, "such persons as SIPC shall specify." Section 5(b)(3) 1970 Act, 15 U.S.C. § 78eee(b)(3).

The 1970 Act requires that liquidation proceedings be conducted in accordance with, and as though they were being proceeded with under Chapter X of the Bankruptcy Act. Section 6(c)(1) of the 1970 Act, 15 U.S.C. § 78fff(c)(1). With respect to the allowance of compensation to the trustee and his counsel, the clear intent of this statute is to make applicable to a SIPC liquidation Section 241 of the Bankruptcy Act, 11 U.S.C. § 641, which provides in pertinent part that "the judge may allow . . . reasonable compensation for services rendered . . . in a proceeding under this chapter . . . by the trustee and . . . [his] attorneys . . . ." Section 241 also specifically makes inapplicable for the determination of the amount of such compensation Sections 68 and 76 of Title 11, U.S.C., the provisions of the bankruptcy statutes which deal with compensation.

The services to be rendered by a trustee and his counsel are not contingent on success and there is no need to reward them on a salvage basis. The appointees are persons selected for quasi-public service by a public agency and presented to the Court for appointment by the agency to conduct proceedings in which there is a substantial public interest at stake. In equating a SIPC liquidation with a Chapter X reorganization, the purpose was to adequately serve the public interest in such matters at a level somewhat different from straight bankruptcy proceedings. The primary criterion is not rigid economy as in straight bankruptcy. At the same time the Court must be careful to avoid permitting a brokerage liquidation under SIPC to be turned into an opportunity for vicarious generosity at the expense of a stricken entity on a "free enterprise" basis. While a solvent concern might be only too happy, if not necessarily obliged, to pay the going rates in the community for private services, that

measure is not to be required from an estate in a Court reorganization or SIPC liquidation. It was not the intention of Congress that the compensation of a trustee and his counsel be set at levels so "economical" as to discourage individuals experienced in the securities and brokerage fields from accepting service in such capacities. But neither was it the congressional intent to utilize the fund created to salvage the interest of misused customers to pay lucrative fees beyond the criteria generally employed in awards under Chapter X. While the Court is not limited by the "economical spirit of the Bankruptcy Act", In Re Mabson Lumber Co., 394 F.2d 23 (2d Cir. 1968), as it would be in an ordinary bankruptcy proceeding, neither is the Court obliged to adopt the prevailing fee schedule among "going rate" firms in the New York legal community for the conduct of private litigation. In Re Polycast Corp., 289 F.Supp. 712, 720 (D. Conn.1968) (Timbers, Ch. J.); In Re Imperial "400" National, Inc., 432 F.2d 232, 239 n.24 (3d Cir. 1970). The Court is bound to strike a reasonable mean between the two extremes of free choice and forced economy in determining what constitutes "reasonable compensation" in such proceedings. In Re Westec Corp., 313 F.Supp. 1296, 1302 (S.D.Tex.1970).

### III.

The standards for fee allowances in a reorganization proceeding call for the ascertainment of the level of services required, consideration of the burden that an estate can safely bear, the value of required services and the overall relationship of the compensation to the size of the estate being administered under a concept of reasonable economy of administration. *See* Surface Transit, Inc. v.

Saxe, Bacon & O'Shea, 266 F.2d 862, 865 (2d Cir.), cert. denied, 351 U.S. 862, 80 S.Ct. 121, 4 L.Ed.2d 103 (1959).

In considering these concepts, as in other situations in which the value of services is in question, the elements to be evaluated include time and labor necessarily involved, the novelty and difficulty of the questions presented, and the skill required to conduct the cause properly. In Re Coast Investors, Inc., 388 F.2d 622 (9th Cir. 1968). In a SIPC liquidation the Court should take notice of whether professionals or para-professionals may be utilized for the services needed, whether the bulk of the work will require the services of accountants rather than lawyers and whether the work required is legal or clerical in nature. *See* In Re General Economics Corp., 360 F.2d 762, 765 (2d Cir. 1966); In Re Westec Corp., 313 F.Supp. 1296 (S.D.Tex.1970); In Re Polycast Corp., 289 F.Supp. 712 (D.Conn.1968) (Timbers, Ch. J.).

The basic marshalling of the assets and ascertainment of the claims would seem to call for accounting skills and services and SIPC liquidations have uniformly utilized accounting firms for these purposes. The fees for such services are paid directly by SIPC and there is no requirement that the amounts thereof be passed upon or approved by the Courts and the payments therefor have accordingly been made directly by SIPC without any application or notice to the Court administering the SIPC proceeding. In this respect the expenses are treated differently from the treatment of like expenses rendered in a Chapter X or bankruptcy proceeding where retention and compensation of accountants may only be authorized by the Court.* General Orders in Bankruptcy

---

* A trustee with the approval of SIPC may hire and fix the compensation of all personnel including officers and employees of the debtor and of its examining authority and other persons including but not limited to accountants that are deemed by such trustee necessary for all or any purposes of the liquidation proceeding, and no authorization or approval of the Court is required therefor. Section 6(b)(1) of 1970 Act, 15 U.S.C. § 78fff (b)(1).

45; Bankruptcy Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 11.

■ However, the trustee and his attorney are officers of the Court. Their compensation is authorized and determined in accordance with the implications of the section of Chapter X mentioned above which provides for allowance by the Judge of "reasonable compensation for services rendered" by the trustee and his attorney. Their services should not be confused with the services of others in the SIPC liquidation.

■ In the usual case the services required of the trustee are fairly uncomplex and they are principally of a custodial and mechanical character and only on rare occasions require professional skill. Consequently it would be inappropriate in fee applications or reports to magnify the mechanical and clerical functions performed by referring to them as analyses and studies; that would not add weight to the value of the actual work. Non-legal work and non-attorney functions are not properly referable by the SIPC trustee to his counsel to be performed at going rates for highly skilled professional services. Services akin to some of those required of a trustee, namely processing customers' claims to securities and monies and verifying them against the assets and records of the brokerage firm, have many elements of the services usually performed by custodian departments of banks and transfer agents dealing with corporate distributions. To the extent that they are similar, the rates of compensation charged by service organizations bear a marked disparity from the average compensation which might be claimed by partners and associates of law firms for overseeing these functions. For this reason, like services for private clients are undertaken by lower echelons of large and medium sized firms and compensated accordingly.

Indeed, except for an acquaintance with ritualistic procedures and forms to implement them, there is little law work or work calling for a lawyer's talents in most aspects of the prosaic SIPC liquidation. Communications with the customers are a time consuming function but generally do not require legal work from the SIPC trustee. The brunt of the work in a liquidation is analysis and audit of the financial books and records, generally performed by the accountants. It is the accountants' report which usually forms the basis for allowance and payment of claims pursuant to court orders the preparation of which follows a routine form. It is a rare occasion when the discretion of the trustee or the supervision of counsel and exercise of legal judgment are needed to implement the accounting results.

■ One further element of a fee application has recently been re-emphasized by the Court of Appeals, *viz.*, mere estimates are not enough in an application for an allowance. The Court of Appeals has repeatedly requested attorneys to maintain and furnish time records in support of such applications. The applications to be made herein should therefore comply with the directive in In Re Borgenicht v. Hahn, Hessen, Margolis & Ryan, 470 F.2d 283 (2d Cir. 1972).

### IV.

■ The present applications request interim allowances. However, a determination of the amount of compensation for services rendered by a trustee and his counsel in a proceeding under the 1970 Act should ordinarily be deferred until the practical completion of the administration of the estate involved. Interim allowances should be an exception and not expectable or the rule. The conclusion of a SIPC proceeding and the delivery of securities and cash to the customers is the time when the Court is best able to evaluate the overall requirements and results of the proceeding and the applicant's contribution

thereto. Until the conclusion of such a proceeding, no fair estimate of the over-all contribution of the services is feasible in the ordinary case.

By way of comparison, interim allowances of fees in Chapter X proceedings are awarded only to meet severe economic hardship of trustees and their attorneys. *See* In Re Imperial "400" National, Inc., 432 F.2d 232, 234 (3d Cir. 1970). They do not serve as anticipatory fees or progress payments. The relevant criterion is primarily the economic inviability of the trustee in the absence of an award, rather than a formula based upon some hypothetical "whole" which has been partially accomplished.

The cases which have allowed interim awards speak of trustees who have rendered services on a daily basis over prolonged periods of time, often actually moving into the offices of the debtor and operating the business from there. The case before the Court does not present such a situation. No claim is made here of financial hardship or inconvenience in the absence of the award requested.

The calculations of the applicants looking to interim awards follow a theory of divisibility. They have divided their jobs into two parts: the part performed and part not performed. They now ask this Court to take cognizance of that part which has been completed and treat it as a separate entity; to set a value upon that entity; and to further divide this amount in turn so as to award the trustee "72%" of that value at this time. The derivation of the 72% figure does not appear from the application. Possibly it derives from In Re Imperial "400" National, Inc., 432 F. 2d 232, 239 n.24 (3d Cir. 1970).

Accordingly, the application for interim allowances herein will be denied and allowance of fees to the trustee and his counsel will be considered against the relevant standards at the time of practical completion of the services required herein.

So ordered.