**SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff,**

v.

**CHARISMA SECURITIES CORPORATION, Defendant.**

No. 72 Civ. 981(MP).

United States District Court,
S. D. New York.

Feb 26, 1974.

Theodore H. Focht, Michael E. Don, Washington, D. C., for plaintiff.

Edwin L. Gasperini, Trustee, pro se.

Gasperini, Koch & Savage, New York City, for trustee.

## ORDER ON APPLICATION FOR FEES

POLLACK, District Judge.

In this liquidation under the Securities Investor Protection Act (hereinafter "SIPA"), 15 U.S.C. §§ 78aaa–78lll, the Trustee and his counsel (the law firm which is headed by the Trustee) have applied to this Court for a final fee allowance. The amount sought totals some $30,000—$5,000 for the Trustee, and $25,000 for his firm.[1] That figure purports to represent compensation for

77.7 hours of the Trustee's time and 476.4 hours of counsel's time, asserted by the applicants to have been necessarily spent on this liquidation. Midway in the proceedings, the Trustee and his law firm applied for an *interim* fee allowance of $8,075; this was denied as premature "without prejudice to the right of the applicants to present requests for allowances of compensation upon the practical completion of the administration of the estate involved." Securities Investor Protection Corp. (hereinafter "SIPC") v. Charisma Securities Corp., 352 F.Supp. 302 (S.D.N.Y.1972).

The facts relating to this liquidation, its scope, relatively narrow problems, absence of assets, and rather prosaic character, have already been set forth in detail in that prior opinion and need no repetition. Thereafter, on November 2, 1973, the Trustee filed his "Final Report and Account" which was approved by the Court and an order was entered terminating this liquidation except for the allowance of compensation to the applicants; this was reserved for separate order herein.

The background of the administration of this liquidation is particularly significant with respect to the instant applications. Shortly after his appointment, the Trustee hired accountants highly experienced in financial and securities matters. Those accountants undertook and performed most of the significant tasks herein. They collected such records of the company as were to be had; they examined those records carefully and prepared work sheets; they identified and communicated with all potential claimants; these boiled down to a total of only 37 customers; they ascertained that only 24 customers presented allowable claims and that each had only a comparatively small claim; and they catalogued each claim presented and submitted a recommended disposition to the

---

1. The initial "final fee" application asked for a higher figure—totalling somewhat over $38,000—but that figure was voluntarily reduced, without suggestion of the Court either as to the propriety of such a reduction or of the amount requested.

Trustee.[2] Scrutiny of the claims file shows that the input thereon of the Trustee and his counsel both before and after the work of the accountants was largely limited to the preparation of a single "form" letter to be mailed to each claimant, as well as a short reply, prepared in terms following the recommendation of the accountants on the validity and extent of the claim. In virtually every instance, all substantive work—including the subsequent contacts and negotiations with the claimants, and the fielding of controversies presented therein—was performed by the accountants. The accountants' determination of the validity and the allowable amount of the claims presented was covered in three reports to the Trustee which, without exception, became the basis of the rejection of a claim or the payment of the claim by SIPC on request of the Trustee. For their professional services, the accountants were paid by SIPC on request of the Trustee the sum of $13,773.75.[3]

The total sums paid out to claimants in this liquidation was approximately $43,000. Together with the fees paid to the accountants, the applications before the Court would result in total fees for administering those claims of $43,773.75 (plus stenographic charges which SIPC has apparently paid to the Trustee or his law firm). The total would represent a cost of about $1,000 for every $1,000 of net equities returned to Charisma's customers.

A fee allowance, whether in Chapter X proceedings or satellites thereof must bear a sensible and practical relation to the size of the estate, the number of claims involved and the ac-

tual services reasonably and necessarily required in the administration. The value of the estate is a highly significant factor to be appreciated. *See* 352 F.Supp. at 307. *See also* SEC v. Quodar Equities, Ltd., 372 F.Supp. 487 (E.D.N.Y.1973) ("The Trustee's fee must be related to the value of the estate.")

To be sure, the Trustee and his counsel were additionally faced with the somewhat unenviable task of uncovering Charisma's assets—which here totalled less than $15—and reconstructing the events leading to the corporation's downfall. Furthermore, at least two of the claimants presented some complexities that had to be resolved apart from the benefit of the accountants' recommendations. Nonetheless, the responsibilities undertaken, the routine and simple tasks performed, and the work exhibited herein simply fail to justify the need for the claimed services or the fees requested.

Apart from the foregoing, both Trustee and his counsel have repeated the mistake of their earlier interim fee application in attempting to bill their time at the "going rates" for law firms in New York.[4] As noted in that opinion, the "going rate" suggested here is not necessarily the standard for determining allowances in simple, routine liquidations which involve little more than accounting ascertainment and payment of net equities of stock brokerage customers. *See also* Surface Transit, Inc. v. Saxe, Bacon & O'Shea, 266 F.2d 862 (2d Cir. 1960).

As indicated previously, the SIPA requires that liquidations be conducted in accordance with, and as though they were proceeding under, Chapter X of the Bankruptcy Act. 15

---

2. In order to appreciate the actual situation and any problems presented thereby at first hand, the Court procured the entire claims file, which consists of but one single red folder of papers.

3. The statute permits the Trustee to select the accountants, to agree on their compensation, and to secure payment for them from SIPC without any notice to, review by, or approval of the federal Court involved in the

matter. 15 U.S.C. § 78fff(b)(1). In this regard the procedure is unlike that under Chapter X of the Bankruptcy Law, the avowed lodestar of SIPC liquidations.

4. That "rate" is said to be between $90–$100 per hour for partner's time, and $45 per hour for associate's time. Unquestionably, the "rate" is higher for particular types of services as well as lower for others.

U.S.C. § 78fff(c)(1). *See also* SEC v. Packer, Wilbur & Co., Inc., 362 F.Supp. 510 (S.D.N.Y.1973). That area of law has been plowed extensively for over 35 years, is well known, and easily navigated by practitioners in the field. That Act provides that "the judge may allow . . . reasonable compensation for services rendered . . . in a proceeding under this chapter . . . by the trustee and . . . [his] attorneys. . . ." 11 U.S.C. § 641. While it is true that the "economical spirit" of the Bankruptcy Act does not limit the allowance of fees in a SIPC liquidation, neither should this Court permit such a liquidation to be "turned into an opportunity for vicarious generosity at the expense of a stricken entity." 352 F.Supp. at 306; *see also* In re Polycast Corp., 289 F.Supp. 712 (D. Conn.1968). In short, this Court's function is to allow a "reasonable" compensation for such expert legal and administrative work as is reasonably and sensibly required by the circumstances presented, and in fixing the proper fee to "strike a reasonable mean between the two extremes of free choice and forced economy." 352 F.Supp. at 307; *see also* In re Mabson Lumber Co., 394 F.2d 23 (2d Cir. 1968); In re Westec Corp., 313 F.Supp. 1296 (S.D.Texas 1970); In re Dole, 244 F.Supp. 751 (D.Me.1965).

In this Court's earlier opinion the relevant standards were expressed as follows:

> The standards for fee allowances in a reorganization proceeding call for the ascertainment of the level of services required, consideration of the burden that an estate can safely bear, the value of required services and the overall relationship of the compensation to the size of the estate being administered under a concept of reasonable economy of administration. [citation omitted].

. . . [T]he Court should take notice of whether professionals or paraprofessionals may be utilized for the services needed, whether the bulk of the work will require the services of accountants rather than lawyers, and whether the work required is legal or clerical in nature [citations omitted]. 352 F.Supp. at 307.

In addition to the foregoing, the Court must consider the time and labor required, the novelty of the problems presented, and the difficulty of the questions involved. *See* A.B.A. Code of Professional Responsibility § DR 2–106. Here, the work done in marshalling the assets and determining the liabilities of Charisma, as well as processing the small number of claims, was properly— and, apparently, also actually—a pure accounting function. Accordingly, since the accountants have already been appropriately compensated for their work in that regard, further payment of fees for legal and administrative services superimposed thereon at top legal rates to the Trustee or his law firm, would simply—and wrongfully—duplicate to a material degree the proper fees already paid. Additionally, many of the "administrative matters" cited by the applicants herein realistically involved only routine, non-expert bookkeeping and hence must be appropriately discounted, if not altogether disregarded. *See generally* In re Mabson Lumber Co., *supra*; In re Hardwick & Magee Co., 355 F. Supp. 58 (E.D.Pa.1973); *see also* In re Roustabout Co., 386 F.2d 354 (3d Cir. 1967). The applications call attention to many hours of extensive "research" into the "background of the securities industry."[5] This area of time spent must be likewise discounted for an allowance in a simple case of this sort, for it is neither the function nor the purpose of the SIPA to compensate lawyers altogether unfamiliar with this field or the securities business for their self-ed-

---

5. The Trustee asks specifically to be compensated for time "acquaint[ing] myself with the technicalities of the securities industry" (Trustee's Application, page 4); his counsel similarly cites time spent in exploring "the intricacies of the brokerage industry" (Counsel's Application, page 20).

ucation therein. Under the law, the Court has no function in the selection of a Trustee or his counsel; it merely orders their appointment on the recommendation of SIPC and the wisdom thereof is not now pertinent. However, the Court is entitled to presume that SIPC appoints and recommends attorneys selected for their acquaintance with, if not expertise in, this area (cf. SIPC v. Oxford Securities, 354 F.Supp. 301 (S.D.N.Y., rev'd mem., 486 F.2d 1396 (2d Cir. 1973)); it would, therefore, surely be inappropriate to compensate selectees for acquiring a basic background knowledge which undoubtedly was presumed in making their initial selection. In that regard, it should also be noted that both the Trustee and his counsel have even applied here for fees representing work done for about a month *prior* to their appointment by SIPC and the entry of an order of this Court designating them herein. How they learned in advance of their appointment that they would be named in an order of the Court in a liquidation not yet ordered is unclear. Needless to say, it would be improper to allow compensation for work done on a liquidation that had not yet been ordered to be commenced, or before the applicants were employed and authorized by the Court to act. *See* 6 Remington on Bankruptcy (5th Ed. 1952) § 2646; In re Orbit Liquor Store, 439 F.2d 1351 (5th Cir. 1971). In short, the applications submitted herein do no more than ritualistically repeat rote allegations of service generalities—precisely the sort of application that this Court's prior opinion explicitly cautioned against. *See* 352 F. Supp. at 308.

The only work herein that can properly be denominated as necessary and legal in character relates to three contested claims and one potential litigation in which the Trustee brought a Rule 10b–5 suit against a former principal of Charisma.[6] That litigation, Charisma v. Adelman, 72 Civ. 4840, was neither authorized by the Court before it was filed nor allowed to proceed once this Court ascertained by inquiry of the Trustee that there was at best a speculative, indeed a gossamer, basis for the alleged claim, coupled with dim and perhaps no probability of a collection for the estate, even if brought to judgment. The submission of seven orders of a kind routine to proceedings under Chapter X administration, and five status reports to this Court likewise involved the services of counsel. However, as noted above, the three claims required a minimum of preparation and research; none involved more than minimal court appearances. Similarly, the "orders" prepared and submitted to the Court were the usual short, standard forms, while the "Reports" simply summarized the work of others.

In sum, even the more "complicated" aspects of the Charisma liquidation were, in reality, fairly simple and straightforward, and in no way justify substantial fees based on requirements for experts or specialized service. That SIPC has gone on record as "support [ing] in full the respective applications of the Trustee and his Counsel" adds no weight in the present circumstances; in-

6. The contested claims themselves were relatively straightforward. The first involved the claim of various members of the Fischer family, and a related trust, which owned 24½% of the stock of Charisma. After a short hearing before the Court, the claims were disallowed insofar as payment from SIPC was requested, and relegated to the category of general creditors' claims. The second claim involved issues arising from certain purchases of stock by M. Jim Karp, an individual who, it was alleged, was connected with Charisma. After a very brief hearing—held on the same day as the hearing involving the Fischer claim—the Court determined that Karp had a claim for $8,500. The third claim was by Shirley Bennett, who argued that she had purchased certain shares from Charisma through the aforementioned M. Jim Karp; apparently, trustee's counsel was forced to undertake some independent investigation to determine the validity of that claim, wholly apart from an examination of the books and records of Charisma.

deed, it is beyond comprehension how the statutory guardians of the contributions of the financial community, formed to aid the customers of stricken brokerage firms, can have allowed these applications to be blindly rubber-stamped, without examination of the claims or any close scrutiny or appreciation of the realities involved. An opportunity to explain resulted in a letter to the Court which is being filed herewith that wholly fails to indicate that SIPC even saw the claims, the files, or anything to do with them, except the Trustee's reports and perhaps some oral explanations thereof.

SIPC, the Trustee, and his counsel are all entrusted with the highest standards of diligence and responsibility. The brokerage community, which finances the fund, is entitled to no less than this in the treatment of its contributions. The liquidation before this Court is, by any and every standard, a small one involving small uncomplicated claims. If the fees requested herein were to be allowed in full, the result would signal a radical departure from the words and intent of the Act created to protect customers' net equities in the hands of enterprises that have foundered. This case represents practically nothing beyond ascertaining and paying the customers' net equities to them. Other aspects of other liquidations of an investigatory character or the liquidation, pursuit and marshalling of assets formed no significant part of this case. This Court, therefore, simply cannot and will not blindly acquiesce—as SIPC apparently has done—in assessing the fees requested against the trust fund administered by SIPC.

This case points up the probable need for legislative readjustment of the SIPA

and the functions of its administrators. For one thing, all appointments of servicing personnel should be subject to court control, and *all* expenses should be submitted to the Court for approval so that a balanced view of the totality thereof can be maintained. This is the Chapter X requirement which has been relinquished in part under the SIPA without apparent reason, and should therefore be introduced into the liquidation procedure. Moreover, SIPC maintains a legal staff; serious thought should also be given to whether SIPC should also maintain an adequate separate central accounting staff and a platoon of back office brokerage personnel and utilize such staffs to protect and maintain customer accounts during the pendency of liquidation procedures, while conducting liquidations where, as here, only supplemental outside assistance is needed.[7]

■ Adequate supervision and prompt programming on the part of SIPC could perhaps have obviated the unnecessary expenditure of services which the lawyers may have provided in this case in areas where time and effort were not required. For this reason a balance must be struck so that the entire burden is not visited on the lawyers and a more generous fee will be allowed than the amount that realistically should have been incurred. SIPC should thus, in effect, pay more under the circumstances.

To be sure, as noted recently by one District Judge, "[t]here are perhaps few judicial determinations more sophisticated or indeed more difficult than the determination of a fee award." In re Hardwick & Magee Co., 355 F.Supp. 58, 69 (E.D.Pa.1973). This is particularly true when, as here, potentially high-powered facilities have been devoted to rou-

---

**7.** In addition, revision of the SIPA should be considered to more fully apprise members of the public that general contract and fraud claims as well as claims for market losses against brokerage houses are not included in the insurance umbrella afforded by SIPC, and that only net equities of the customers are recoverable up to the ceiling limits given

in the statute. Public unawareness in this area has been clearly portrayed to this Court in this, but more particularly another pending liquidation. SIPC should take immediate steps to rectify this unfortunate situation by a more substantial and explicit method of public notice and notice to claimants at the very inception of a liquidation.

tine, almost mechanical, administrative tasks. It is clear that the extent of the fees here requested can hardly be justified on the facts or sanctioned by a Court for a case like this.

Accordingly, under all the facts and circumstances presented herein, it is the judgment of this Court that the fair and reasonable compensation for the Trustee to be paid herein by SIPC is $3,500, and for his law firm, $6,500.

So ordered.