**SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff-Appellant,**

v.

**CHARISMA SECURITIES CORPO-RATION, Defendant,**

**Edwin L. Gasperini, Petitioner-Appellant,**

**Gasperini & Savage, Petitioner-Appellant.**

**Nos. 119, 120, Dockets 74–1511, 74–1564.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 4, 1974.

Decided Nov. 21, 1974.

1192

Theodore H. Focht, Gen. Counsel, Securities Investor Protection Corp., Washington, D. C. (Wilfred R. Caron, Michael E. Don and Robert G. Richardson, Washington, D. C., on the brief), for Securities Investor Protection Corp.

Edwin L. Gasperini, New York City (Gasperini & Savage, New York City, on the brief), pro se and for Gasperini & Savage.

Before KAUFMAN, Chief Judge, and ANDERSON and MULLIGAN, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

Of the many appeals we have heard regarding awards of trustee and counsel fees in bankruptcy proceedings, this is the first to arise in the context of the Securities Investor Protection Act of 1970 [SIPA], 15 U.S.C. §§ 78aaa et seq. (1970). The Act provides a scheme for the orderly liquidation of failed securities brokerage firms and for the financial protection of their customers. Its main feature is a fund of some $150 million obtained from assessments levied upon all brokerage firms. The fund, administered by Securities Investor Protection Corporation [SIPC], is used to pay the expenses of liquidation and to satisfy customers' claims up to $50,000 [1] when other assets are not available.

I.

The facts in this case are fully set out in the opinion below, 371 F.Supp. 894

1. Claims for outstanding cash balances may be satisfied only to the extent of $20,000 per customer, 15 U.S.C. § 78fff(f)(1)(1970).

(S.D.N.Y.1974), and in an earlier opinion dealing with the award of interim fees, 352 F.Supp. 302 (S.D.N.Y.1972), and require only brief restatement. On March 9, 1972, on motion of SIPC, the District Court made the statutory finding that Charisma Securities Corporation needed the protection of SIPA, since it was in danger of failing to meet its obligations to its customers and was violating certain SEC rules relating to financial security. *See* 15 U.S.C. § 78eee(a), (b). SIPC recommended Edwin L. Gasperini, a respected member of the bar, as trustee and his firm, Gasperini & Savage, as counsel. The court followed these recommendations.

The liquidation proceeded apace. Gasperini engaged accountants to analyze Charisma's records which were, to put it mildly, in a state of disarray. At his request, SIPC paid the accountants $13,773.75. Gasperini also secured necessary court orders and forwarded required notices to possible claimants. Of 37 asserted claims, 24 were allowed in whole or in part (a total of $42,206.62), and 13 (totalling $92,280.37) were disallowed. Gasperini also attempted to marshal Charisma's assets, only to find the cupboard was almost bare. His firm, Gasperini & Savage, assisted him throughout.

Although SIPC recommended awards of $5000 to Gasperini and $25,000 to Gasperini & Savage, the district court allowed only one-third the suggested total—$3500 to Gasperini and $6500 to his counsel. The court viewed the liquidation as quite routine, involving few and simple claims, no assets, and little work that should have been performed by lawyers as opposed to accountants or non-professionals.

■ Gasperini and his firm were, of course, displeased with these allowances and hastened to appeal, as did SIPC. Uncertain whether appeal was available as of right, they also filed applications for leave to appeal, which we granted.[2] Although the interest in these fee allowances was entirely on the side of Gasperini, his counsel, and SIPC, and no one appeared to defend Judge Pollack's decision, we believe, nevertheless, that the judgment below withstands the attacks directed at it, and affirm.

## II.

It is clear that the standards governing SIPA liquidations are established by § 78fff(c)(1):

> Except as inconsistent with the provisions of this chapter and except that in no event shall a plan of reorganization be formulated, a liquidation proceeding shall be conducted in accordance with . . . provisions of chapter X [of the Bankruptcy Act] . . . ..

■ Chapter X provides that a judge is required to scrutinize the reasonableness of fee awards. Section 241, 11 U.S.C. § 641, states that "The judge may allow . . . reasonable compensation for services rendered . . . by the trustee and other officers, and the attorneys for any of them . . . .." Until these proceedings, there was no doubt that § 241 was made applicable to SIPA by § 78fff(c)(1). *See* Guttman, Broker-Dealer Bankruptcies, 48 N.Y.U.L.Rev. 887, 934 (1973). ("A trustee and his at-

2. SIPC urges that we settle the uncertainty as to the proper method of appeal of fee awards under SIPA by ruling that such appeals may be taken of right. Although we need not decide this issue since leave to appeal was granted here, we believe it appropriate to provide guidance for the future.

We are of the view that appeals are available only by leave of this court, in accordance with § 250 of the Bankruptcy Act, 11 U.S.C. § 650, which is applicable to SIPA by 15 U.S.C. § 78fff(c)(1). SIPC maintains that § 250 is rooted in the need to expedite the finality of approved plans of reorganization unencumbered by delays resulting from possibly frivolous appeals of fee awards, and that this policy is inapplicable to SIPA, which prohibits reorganizations. The argument suggests, at most, that § 250 is not necessary for the effectuation of SIPA. That, however, is a far cry from the showing, required by § 78fff(c)(1), that § 250 is "inconsistent" with SIPA. *See infra* at 1195–1196.

torney, once appointed, become officers of the court like any other bankruptcy trustee and his attorney. Their compensation is determined by the court, not SIPC.")

SIPC maintains, however, that § 241 has limited applicability to so-called "no-asset" cases, in which SIPC pays the fee. The purpose of judicial scrutiny under § 241, SIPC argues, is twofold—the protection of creditors and the reorganized corporation from the award of excessive fees, and the prevention of the abuse of the judicial system that award of such fees would imply. Only the second of these considerations would apply in SIPA "no-asset" cases, since no creditors are affected when SIPC pays the fee, and reorganizations are prohibited. Thus, SIPC contends, the district courts should not disapprove SIPC-recommended fee awards in "no-asset" cases unless they are so excessive and outrageous that the integrity of the judicial system is at stake.

Even on its face, this argument is flawed. It would suggest that a higher fee might be and should appropriately be paid in a "no-asset" case, in which SIPC pays the fee, than in a liquidation involving substantial assets, in which the fee would be borne by a bankrupt's creditors. In addition, SIPC fails to give any sound reasons for adopting a policy whereby the brokerage community, which finances the fund, is deserving of less judicial protection from award of excessive fees than are creditors in chapter X proceedings.

■ Of greater significance is the failure by SIPC to establish that Congress had the slightest intention to limit the judicial scrutiny of fee awards to trustees and their counsel under SIPA.[3]

Indeed the evidence on this point, though sparse, almost uniformly suggests that the district court is to play a fairly active role in SIPA liquidations. "In general, the court in which an application is filed is vested with the powers of a court in a chapter X reorganization. . . . ." H.R.Rep. No. 91–1613, 91st Cong., 2d Sess. 10 (1970), reprinted in U.S.Code Cong. & Admin.News, pp. 5254, 5264 (1970); S.Rep. No. 91–1218, 91st Cong., 2d Sess. 12 (1970). The district court has exclusive jurisdiction over the debtor and his property, can stay other proceedings against the debtor, 15 U.S.C. § 78eee(b)(2), and alone can authorize payment of claims by the trustee. Id. § 78fff(g). The trustee, in turn, must submit reports on his activities to the court. Id. § 78fff (h). Moreover, the court is required to make an independent judgment and findings as to whether a brokerage firm is in need of the protection of the Act, and may not merely rubber-stamp the recommendation of SIPC. SEC v. Alan F. Hughes, Inc., 461 F.2d 974 (2d Cir. 1972).

It is clear, too, that when Congress sought to limit the court's power under SIPA, it did so explicitly. For example, § 78fff(b)(1) provides that so long as SIPC approval is obtained, the trustee may hire and fix the compensation of all personnel necessary for the liquidation of the debtor, without court approval. This section conspicuously omits mention of appointment or compensation of the trustee or his counsel, who are, in fact, appointed by the court pursuant to § 78eee (b)(3). Thus, without more, we would hesitate to find that the court's role in examining fee awards is as limited as SIPC suggests.[4]

---

3. This omission is particularly striking because SIPC's General Counsel, who argued this case here, was previously Special Counsel to the House Subcommittee which considered the bill that became SIPA, and is therefore well acquainted with the legislative history. *See* Hearings on H.R 13308, H.R. 17585, H.R. 18081, H.R. 18109, and H.R. 18458 Before the Subcomm. on Commerce and Finance of the House Comm. on Interstate and

Foreign Commerce, 91st Cong., 2d Sess. II (1970).

4. We find further support for our interpretation of SIPA in the Report of the Task Force appointed by SIPC Chairman Hugh F. Owens to consider possible amendments to the Act. The Task Force recommended elimination of the required court approval of compensation of trustees and their counsel. In doing so, it clearly recognized that the act required ju-

### III.

These general observations do not end our inquiry, however, for § 78fff(c)(1) requires us to determine whether § 241 is "inconsistent" with the aims of SIPA. We state preliminarily that we find little merit in appellants' suggestion that application of § 241 will lead to inadequate compensation awards, which would in turn discourage responsible and competent lawyers from accepting appointment in SIPA cases. In other instances, for example in bankruptcy, we have seen no evidence that the bar is not performing creditably and indeed with distinction, notwithstanding the limited size of fees awarded and the supervision of those fee awards by the courts.

Accordingly, we turn to the heart of the appellants' contention: that the standards applied by the court below, though concededly appropriate for proceedings under chapter X, *see* Surface Transit Inc. v. Saxe, Bacon & O'Shea, 266 F.2d 862 (2d Cir.), cert. denied, 361 U.S. 862, 80 S.Ct. 121, 4 L.Ed.2d 103 (1959), are inconsistent with SIPA. Quoting from his earlier opinion, the district judge noted:

The standards for fee allowances in a reorganization proceeding call for the ascertainment of the level of services required, consideration of the burden that an estate can safely bear, the value of required services and the overall relationship of the compensation to the size of the estate being administered under a concept of reasonable economy of administration.

. . . [T]he Court should take notice of whether professionals or para-professionals may be utilized for the services needed, whether the bulk of the work will require the services of accountants rather than lawyers, and whether the work required is legal or clerical in nature.

371 F.Supp. at 897. He then continued:

In addition to the foregoing, the Court must consider the time and labor required, the novelty of the problems presented, and the difficulty of the questions involved.

*Id.*

■■ Appellants' argument on this point seems to rest on two prongs. The first contention is that consideration of burden on an estate of limited size is improper in SIPA proceedings in which SIPC pays the fee. But, we have already commented that this argument might lead to the bizarre result of higher fees in "no-asset" cases than in cases in which substantial assets are present. Its flaws, however, go deeper than this, for it is based on a misconception about the meaning of "inconsistent" in § 78fff (c)(1). A provision is "inconsistent" with SIPA if it conflicts with an explicit provision of the Act or if its application would substantially impede the fair and effective operation of SIPA without providing significant countervailing benefits.[5] But a provision does not become "inconsistent" simply because it is not absolutely necessary for the operation of the Act. Thus, a district judge would not be justified in disregarding, as one relevant factor, the need for sensible and economical administration because SIPC was paying the fee. As we stated in SEC v. Alan F. Hughes, Inc., 481 F.2d 401, 404 (2d Cir.), cert. denied, 414 U.S. 1092, 94

dicial scrutiny of fee awards. Securities Investor Protection Corp., Report to the Board of Directors of the Securities Investor Protection Corporation of the Special Task Force to Consider Possible Amendments to the Securities Investor Protection Act of 1970 at 52–53 (July 1974).

5. Indeed, the SIPC Task Force interprets § 78fff(c)(1) even more broadly than we find necessary to interpret it here. In its view, any provisions of the Bankruptcy Act which are not inconsistent with SIPA "automatically become part of [it], whether beneficial or detrimental to the conduct of a liquidation proceeding." *Id.* at 35.

S.Ct. 722, 38 L.Ed.2d 549 (1973), in response to a similar claim:

> It may be true that allowing fees to the attorneys for defendants in an SIPC proceeding would not reduce the fund available for most broker-dealer customers. But it still does not follow that when incorporating section 64a into the 1970 Act, "[e]xcept as inconsistent with the provisions of" the Act, 15 U.S.C. § 78fff (c)(1), Congress intended to exclude well-settled judicial interpretations of that section.

■ The second prong of the appellants' argument is that the standards applied below do not reflect the special factors involved in SIPA liquidations—the need to protect investors and to maintain confidence in the securities markets—which necessarily require additonal efforts by the trustee and his counsel. It is apparent, however, that the criteria applied by the district court are sufficiently broad to encompass such considerations, and that Judge Pollack gave appropriate weight to them.[6]

### IV.

■ There remains but one further claim to be considered. Citing the rule that the recommendations of the SEC on fee awards must be followed in chapter X proceedings "unless the reorganization judge showed reasons otherwise based on specific findings," Scribner & Miller v. Conway, 238 F.2d 905, 907 (2d Cir. 1956), citing Finn v. Childs Co., 181 F.2d 431 (2d Cir. 1950), SIPC argues that its familiarity with SIPA liquidations requires that it be given similar deference. We agree that when reflected in reasons for support of a fee request, SIPC's expertise should be accorded weight by a district court judge. But we hesitate to draw the analogy between the Corporation and the SEC.[7] SIPC is not an independent regulatory agency, § 78ccc(a)(1), nor has it yet had the opportunity to establish a long history of knowledgeable and conscientious performance as has the SEC. Accordingly, we are persuaded that the district judge was not only justified in disagreeing with SIPC's recommendations but had the authority to do so. To suggest that approval by SIPC of fee allowances carries with it an imprimatur which excludes any meaningful judicial review is contrary to the statutory scheme, and would constitute an unwise and dangerous delegation which Congress never intended.

Affirmed.

---

6. The opinion below did not, as appellants state, overemphasize the need for economy of administration in light of the size of the estate. Rather, it noted:
    While it is true that the "economical spirit" of the Bankruptcy Act does not limit the allowance of fees in a SIPC liquidation, neither should this Court permit such a liquidation to be "turned into an opportunity for vicarious generosity at the expense of a stricken entity."
371 F.Supp. at 897.

7. In fact, it is contemplated that the SEC will exercise a supervisory role over SIPC performance. *See* H.R.Rep.No.91–1613, 91st Cong., 2d Sess. 11–12 (1970), U.S.Code Cong. & Admin.News 1970, pp. 5265, 5266 ("substantial oversight on the part of the Commission"; "Your committee, not only directs, but expects the Commission to use its oversight in a vigorous, but fair, manner.")