## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

### Securities Investor Protection Corporation, Applicant,

v.

## G. M. STANLEY & CO., INC., et al., Defendants.

### No. 72 Civ. 3017.

United States District Court, S. D. New York.

Dec. 28, 1976.

## OPINION

EDWARD WEINFELD, District Judge.

This is a joint application for compensation for services rendered by the Trustee and his counsel in the liquidation, under the provisions of the Securities Investor Protection Act of 1970,[1] of G. M. Stanley & Co., Inc., formerly engaged in the brokerage business. Upon initial consideration, the amounts requested appeared so startlingly out of proportion to the assets of the estate and the total distributions made to claimants that the Court sought the views of the Chairman of the Board of Directors and Chief Executive Officer of Securities Investor Protection Corporation ("SIPC"), which presumably has an interest in the matter. Even more surprisingly, the executive and SIPC have acquiesced in the requested fees as "fair and reasonable." The Court, upon a close examination of all relevant facts, cannot agree and finds to the contrary that the fees are excessive and unwarranted. The fact that SIPC, which ultimately will pay whatever fees are awarded, acquiesces in the requested fees does not relieve this Court of its responsibility for independent judgment on the issue presented. Considerations of public policy require that the courts be vigilant to prevent the imposition of excessive fees upon the fund out of which payment is made and which is derived from assessments upon the financial community.[2] This is underscored by the fact that this is but one of a number of recent similar applications and, even acknowledging the increased cost of legal services and office operation, it is difficult to understand how such requests can be justified.[3] The recurrence suggests that SIPC may well consider, even if legislation is required, the appointment of an in-house counsel so that the legal expense involved in liquidations be kept at a reasonable level through development of an expert legal staff that will operate at maximum efficiency.

Theodore H. Focht, Gen. Counsel, William H. Seckinger, Senior Atty., Washington, D. C., for Securities Investor Protection Corp.

Anderson Russell Kill & Olick, P. C., New York City, for Trustee Winthrop J. Allegaert; David P. Prescott, New York City, of counsel.

---

1.  15 U.S.C. §§ 78aaa–78lll.

2.  15 U.S.C. § 78ddd(a), (c) & (d).

3.  See Securities Investor Protection Corp. v. Charisma Securities Corp., 371 F.Supp. 894 (S.D.N.Y.), aff'd, 506 F.2d 1191 (2d Cir. 1974); SEC v. Kelly, Andrews & Bradley, Inc., 423 F.Supp. 645 (S.D.N.Y. 1976).

Liquidation of G. M. Stanley & Co., Inc. ("Stanley") was commenced pursuant to an order of this Court dated July 18, 1972, which was granted upon Stanley's consent. Thereafter what was involved was a routine liquidation of Stanley. Winthrop J. Allegaert was appointed Trustee for the liquidation, and his law firm was retained as his counsel; upon his withdrawal from that firm it continued, with the consent of SIPC, to serve as his counsel. The trustee and his counsel request a total of $50,817.50 ($4,571.25 for the Trustee and $46,246.25 for the attorneys), plus $4,870.02 disbursements. Accounting fees in the sum of $61,065 have already been paid, and a further $3,304.25 has been billed, the accountants having been "deemed by [the Trustee] necessary for . . . purposes of the liquidation proceeding."[4] Thus accounting, counsel and trustee fees, if the latter were allowed as requested, would total $115,186 for the administration of this estate in liquidation.

Now let us consider the estate. The total size of the estate received by the Trustee was $13,530, which consisted of cash in bank, proceeds of sale of securities and other assets and recoveries from customers. The Trustee also debits himself with $88,645.98 for "advances from Securities Investor Protection Corporation,"[5] as shown below.

CASH RECEIPTS:

| | |
|---|---|
| Underwriters Bank and Trust Company | $ 1,388.20 |
| Advances from Securities Investor Protection Corporation | 88,645.98 |
| Sale of securities | 2,117.46 |
| Proceeds on sale of G. M. Stanley's furniture and office equipment | 3,095.34 |
| Recovered from customers of G. M. Stanley | 6,688.25 |
| Sundry | 241.29 |
| TOTAL CASH RECEIPTS | $102,176.52 |

The Trustee disbursed, in satisfaction of customer claims and in fulfillment of the primary purpose of this proceeding,[6] a total of $23,633.81. The total disbursements are stated by the Trustee as follows:

CASH DISBURSEMENTS:

| | | |
|---|---|---|
| Distributed to claimants | $23,633.81 | |
| Advertisement of liquidation, printing and mailing of notices of liquidation, customer claim forms, broker-dealer claim forms, notices to general creditors | 3,234.68 | |
| Rent on G. M. Stanley offices at 55 Liberty Street | 2,488.21 | |
| Accounting fees | 61,065.00 | |
| Clerical and bookkeeping expenses | 2,004.52 | |
| Reporting and transcript services | 599.70 | |
| Sundry administrative expense | 2,261.54 | |
| TOTAL CASH DISBURSEMENTS | | $ 95,287.46 |
| BALANCE ON HAND AS OF OCTOBER 31, 1976 | | $ 6,889.06 |

How are the requested fees justified? The Trustee states that following his appointment he took possession of the physical assets of Stanley and caused an auction sale to be held; that he published notice of the liquidation proceeding and of his appointment; that he forwarded letters, notices and claim forms or statements of contractual commitment to 1,044 customers and to 535 broker-dealers; that in response, 287 customers and ten general creditors submitted claims; that following the first meeting of creditors, which was adjourned sine die, distributions were made to customers entitled thereto; that between November 16, 1972 and January 11, 1973, routine claims of virtually all customers were passed upon and the bulk of distribution to these customers was completed by February 15, 1973; that thereafter so-called "difficult customer claims" were processed and resolved" and distributions to this group were concluded by December 1973.

The Trustee further alleges that it was necessary to make a detailed investigation of several customers' claims which were not in accord with Stanley's books. Many of these claims stemmed from apparent unauthorized trading and the investigation included the taking of depositions (presumably by his attorneys) of several persons who

4. 15 U.S.C. § 78fff(b)(1)(A).

5. 15 U.S.C. § 78fff(f)(1) & (2).

6. See 15 U.S.C. § 78fff(a).

were principals or registered representatives of Stanley.[7] The Trustee lists twelve specific claims and states the problems involved, but he indicates nothing more than the contentions advanced by the claimants and the Trustee's explanation of why payment was declined. These are routine, run of the mill claims by customers, some of which were allowed and others rejected by the Trustee. It is noted that "the bulk of the claims were handled by [the accountants] who based on the records of G. M. Stanley & Co., Inc., determined what property customers were entitled to receive, then recommended such a disposition to the Trustee." Hearings before the Magistrate were conducted with respect to six claimants who disagreed with the Trustee's proposed disposition. Some claimants defaulted and others agreed to settlement before the Magistrate. A fair reading of the nature of these claims and the issues about which dispute centered suggests that the Trustee's description of them as "complex" and involving "difficult factual and legal questions" of first impression is somewhat exaggerated.

The present balance in the estate account is $6,889.06 which SIPC is entitled to receive in priority over all other claims. Since SIPC advanced, as shown above, a total of $88,645.98, no general creditor will receive any distribution; moreover, SIPC will be required to pay the fees allowed to the Trustee and his counsel.

The attorneys' recital of their services tracks in substantial measure the description of those rendered by the Trustee, particularly with respect to contested claims referred to above. The attorneys state that extensive preparation was required as to settlement discussions and scheduled hearings; that they attended many hearings in court and before the Magistrate; and that they had numerous conferences and discussions with claimants and their counsel relative to these claims. They assert that as a result of the handling of these claims the estate saved more than $50,000. The fact that non-meritorious claims were resisted by no means establishes that the estate was saved this sum. It was the duty of the Trustee and his attorneys to defend against and reject improper claims.

The Trustee's counsel logged a total of more than 790 hours in performing services for the Trustee. This is almost twenty full forty-hour weeks in a routine, simple and uncomplicated liquidation. In addition, another 158 hours are billed for "legal assistance" at $25 to $30 per hour.

■ An overall review of the problems in this estate and a detailed analysis of the time logged by senior partners and legal assistants suggests either that the time factor was more than was reasonably required to bring matters to an orderly and expeditious conclusion, or that the activities of the Trustee and his counsel were extravagant or inefficient. As this Court has stated in a somewhat parallel situation, a court may "be presumed to be knowledgeable as to the reasonable time and the number of attorneys required to perform services competently and effectively in furthering the success of the litigation."[8]

The Court is of the view, based upon a consideration of the applicable standards, that a fair and reasonable fee is $2500 for the Trustee and $22,500 to his attorneys (plus their requested disbursements).

Submit order in accordance with the foregoing.

7. When questioned about these claims, two principals of Stanley invoked their Fifth Amendment privilege against self-incrimination. Both the Trustee and his attorneys concluded that the defendants were judgment proof and that further efforts to establish their liability for losses to the estate would be unavailing. Even allowing for the fact that the apparent unauthorized trading engaged in by Stanley created problems requiring above-average expenditure of time in resolving claims, the services performed for the estate are over-valued in the light of the alleged benefits accruing from them.

8. *Blank v. Talley Indus., Inc.*, 390 F.Supp. 1, 4 (S.D.N.Y.1975); *cf. First Nat'l Bank v. Pepper*, 547 F.2d 708 (2d Cir. 1976). *See also Securities Investor Protection Corp. v. Charisma Securities Corp.*, 506 F.2d 1191 (2d Cir. 1974).