## In re TSELANI IMPORTS CORP., Bankrupt.

Bankruptcy No. 79 Civ. 6125 (KTD), No. 76 B 646.

United States District Court, S. D. New York.

Feb. 20, 1980.

Bradley B. Davis, New York City, for appellant, Original Trustee.

Hahn, Hessen, Margolis & Ryan, New York City, for appellees, Successor Trustees.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

Bradley Davis, the original trustee in bankruptcy for Tselani Imports Corporation, Inc. [hereinafter referred to as "Tselani"] appeals from an October 25, 1979 Order

of Bankruptcy Judge Lewittes. After reargument, this order reaffirmed the fixing of compensation for services rendered by various people in connection with Tselani's voluntary bankruptcy proceedings. The facts pertinent to the instant motion are briefly summarized below.

In mid-1975, Margot Stewart provided Farouk Hamdy, by way of investments and loans totalling $60,000, with the necessary capital to establish the Tselani Imports Corporation. An agreement was reached under which Stewart would receive a substantial percentage of the corporation's stock as well as a salary. Through a series of circumstances, however, Stewart never received any stock and was never paid a salary nor repaid any of the monies she loaned to the company. As a result, she is the principal creditor of the bankrupt estate.

In March, 1976, Farouk Hamdy filed a voluntary petition in bankruptcy as President of Tselani. Shortly thereafter, Margot Stewart's attorney, Bradley Davis, was appointed as trustee. At the Adjourned First Meeting in May, 1976, it came to the Bankruptcy Court's attention that Mr. Davis might have serious conflicts of interest. He subsequently agreed to step down as trustee and Michael Landes was appointed as successor trustee.

There is much bickering between the two trustees as to the competency of each and the value of services performed. Landes complains that he spent much of his time undoing the mistakes made by Davis. On the other hand, Davis charges that despite an offer by Stewart to pay all creditors 100 cents on the dollar, Landes held a bankruptcy sale at which the assets sold at a fraction of their appraised value. Whatever the merits of these various charges, it is true that creditors' claims were paid off at substantially less than the amounts claimed.

After the Order of Final Distribution was completed, applications for compensation were made and the following awards granted by an Order of Bankruptcy Judge Lewittes dated May 9, 1979:

| | |
|---|---|
| Original Trustee | $15.00 |
| Successor Trustee | $330.00 |
| Attorneys for Successor | $4,500.00 |
| Disbursements | $75.00 |
| Accountants | $1,000.00 |
| Appraiser | $125.00 |

Thereafter, Bradley Davis moved to vacate or modify the Order. This motion was denied and the Order reaffirmed on October 25, 1979. The instant appeal followed, which was argued before this Court on January 8, 1980.

Davis raises three points on appeal. First, he contends that trustee's fees were distributed out of proportion to services rendered and expenses incurred. Accordingly, he asks that the distribution be reversed so that the successor trustee get $15.00 and he get the remainder. Second, he argues that the fees to the successor trustee's attorney were excessive and improper. Third, he challenges the fees to the accountants and appraisers as similarly excessive.

*No answering papers were filed.*

*I. Trustees' Fees*

Under the new Bankruptcy Act, effective October 1, 1979, compensation to trustees is governed by 11 U.S.C. §§ 326, 330. Since the instant case was commenced under the old Bankruptcy Act, however, its terms apply to all related matters and proceedings. Pub.L.No.95–598, § 403, 92 Stat. 2683 (1978). Thus, the question of trustee's fees in the instant appeal is governed by former 11 U.S.C. § 76(c) (current version at 11 U.S.C. § 326(a)). According to that provision, compensation of trustees is set based on a percentage of the moneys in the business of the bankrupt. When more than one trustee is involved, such fixed compensation is to be apportioned "according to the services actually rendered".

Davis argues that he rendered far more "actual service" than Landes in connection with the bankruptcy. In addition, he alleges that he incurred $200.00 in disbursements, $185.00 of which will come out of his own pocket if his $15.00 award stands. He does concede, however, that Landes acted as trustee for a longer period of time. Davis counters this disparity in length of service by arguing first, that length of time served

is not a relevant consideration and second, that the time Landes acted as trustee after he rejected Stewart's "100 cents on the dollar" offer should not be counted. The latter argument is based on reasoning that any activities of the trustee after this point in time only served to reduce creditors' recoveries.

■ Rule 810 of the Rules of Bankruptcy Procedure requires that the District Court accept the findings of the bankruptcy judge below unless they are clearly erroneous. *In re Fabric Tree, Inc.*, 558 F.2d 1069, 1072 (2d Cir. 1977). I cannot conclude that the Bankruptcy Judge's apportionment of the trustee's fee in the instant case was "clearly erroneous."

■ Bradley Davis stepped down as trustee in May, 1976, after having served in that capacity for only one month. Michael Landes, on the other hand, served as trustee from May, 1976 until at least May, 1979. Contrary to Davis' assertion, I find that the one year and eleven months difference in amount of time served may be considered a relevant factor under § 76(c) where there is additional documentation of services rendered. Here, Mr. Davis' Trustee Reports indicate that during his month's tenure, he merely conducted an inventory, located various assets and accounts of the corporation, and made a cursory examination of corporate records. Mr. Landes' Final Report, on the other hand, shows that during his two year tenure he obtained numerous orders, commenced several adversary proceedings, prepared interim reports, and arranged for the sale of assets. The services provided by both trustees were specifically found by Bankruptcy Judge Lewittes to have been "satisfactorily performed."

Given the information provided by these reports and the vast difference in time spent as trustee, it was not at all unreasonable for the Bankruptcy Judge to apportion trustee's fees as he did. I find that the apportionment of trustee's fees below was not erroneous and, accordingly, affirm that portion of Bankruptcy Judge Lewittes' Order.

## II. Fees to Attorneys for Successor Trustee

At the outset of this portion of the Opinion, it should be pointed out that attorneys for the successor trustee submitted no briefs in support of their fee award below. Rather, they choose to rest on the fact that due consideration was given to the determination of their fees by the Bankruptcy Judge which, they urged in oral argument, was not "clearly erroneous".

Nowhere in the record on appeal is there any hourly breakdown of legal services rendered.

The Second Circuit has consistently held that:

. . . any attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent. Lawyers are well aware that, especially where services of the nature here involved are spread over a period of time and ultimate payment is virtually assured, they are valued principally on the basis of the time required. There is no excuse for an established law firm to rely on estimates made on the eve of payment and almost entirely unsupported by daily records or for it to expect a court to do so.

*In re Hudson & Manhattan Railroad Co.*, 339 F.2d 114, 115 (2d Cir. 1964). More recently, this Court chastised a law firm for keeping time records without any indication of how the time was spent. *In the Matter of Interstate Stores, Inc.*, 437 F.Supp. 14, 16 n.4 (S.D.N.Y.1977). In that case, the bankruptcy judge was held to be in error for giving full weight to hours inadequately detailed.

■ In the instant case a fee was awarded without any hourly breakdown at all. The attorneys in this case, after listing eight general areas in which they performed services merely made a "calculation" that they had expended "173 hours to date in rendering legal services as counsel to the successor-trustee." Application for Allowances to Attorneys for the Trustee at 8. This absence of documentation mandates reversal of the Bankruptcy Court.

What is shocking to me is that Landes and his firm, which served as attorneys to the successor trustee herein, were involved as appellee in an appeal to the Second Circuit on this very issue. There, they were told by the Court:

We have warned that mere estimates are not enough in an application for an allowance, and we have repeatedly requested attorneys to maintain and furnish time records in support of such applications. . . . The failure of appellee here to keep proper records indicates that some other course may be required to obtain compliance with what we regard as a desirable practice. However, it is not necessary to consider that possibility in this case. We were informed at oral argument that appellee can substantially reconstruct accurate time records.

*In the Matter of Borgenicht*, 470 F.2d 283, 284 (2d Cir. 1972).

It is my opinion that the course now required to obtain future compliance by this law firm with the repeated mandates of this Circuit is to impose the costs of this appeal and the hearing on remand on the attorneys for the successor trustee.

At oral argument, attorneys for the successor trustee indicated that they were capable of submitting an hourly breakdown of services rendered. I therefore reluctantly [1] remand to the Bankruptcy Court with the following instructions.

First, upon rehearing the question of fees, the Bankruptcy Court should give no weight to applications unsupported by detailed time records. Such time records will not be sufficient if they merely state the number of hours spent on each of the eight matters referred to in the application below. Rather, for each hour applied for, there must be specific indications as to exactly what services were performed and by whom. *In the Matter of Interstate Stores, Inc.*, 437 F.Supp. 14 (S.D.N.Y.1977).

Second, no award shall be given for any services rendered which did not require legal expertise and could have been performed by the trustee. *In re Mabson Lumber Co.*, 394 F.2d 23, 24 (2d Cir. 1968). Finally, the Bankruptcy Court shall specify in detail the basis for any award made.

### III. Fees for Accountants and Appraiser

 Bankruptcy Judge Lewittes awarded $1,000 to accountants for the trustee and $125 to the appraiser. These fees seem reasonable and, certainly, I cannot conclude that they are "clearly erroneous." Accordingly, I affirm as to the accountants and appraiser fees.

In accordance with the foregoing, the order appealed from is affirmed in part and reversed and remanded in part.

SO ORDERED.

---

1. On the present state of the record before me, equity could demand that the appellees be denied any fees whatsoever. Since there will be no cost to the estate and its creditors on remand, however, a more complete record may be in order. If and when such a record is made by the appellee, the Bankruptcy Court may, of course, consider reducing any amount to be awarded as a sanction and as another reminder to the bar in general of professional obligations and requirements intrinsic to the practice of law.