### In re EMERGENCY BEACON CORPORATION, Debtor.

**Bankruptcy Nos. 76 B 356, 77 B 980.**

United States Bankruptcy Court,
S.D. New York.

Oct. 26, 1984.

---

Harvey S. Barr, Spring Valley, N.Y., Trustee and for trustee.

Patterson, Belknap, Webb & Tyler, New York City, special counsel to trustee-in-possession.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for Montco.

Stephen G. Glatzer, pro se.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Various applications for allowances have been submitted for consideration in this confirmed Chapter XI case which was originally filed on December 18, 1976 under the former Bankruptcy Act of 1898, as amended. The Chapter XI case was aborted on March 11, 1977 with the result that Harvey S. Barr, the stand-by trustee, became the trustee in bankruptcy. Thereafter, new management of the corporate debtor reinstated the Chapter XI case with the court's consent. Accordingly, Mr. Barr, the trustee in bankruptcy, continued as the trustee in possession in the reinstated Chapter XI case and directed the debtor's business activities and the conduct of its Chapter XI case. The debtor's losses were turned around and its operations were established

on a profitable basis, with the result that a confirmation of the Chapter XI plan was achieved. The plan provides that the unsecured creditors will receive 10.5% in cash over 7 years together with shares of stock of the debtor, entitling them to receive 5% of the debtor's annual gross income, until a 100% distribution is achieved.

This was an actively litigated Chapter XI case, with numerous adversary proceedings and hearings in this court, the district court and two appeals decided by the United States Court of Appeals for the Second Circuit. There were a series of litigated issues regarding the estate's ownership of vehicles, patent rights and various equipment. See 665 F.2d 36. Throughout this case the debtor and one of its major creditors, Montco Inc. ("Montco") (now known as Montmartco, Inc.), continued a running battle involving various property rights, including Montco's claim that it was entitled to foreclose on the debtor's entire business because it was fully secured. The debtor successfully survived this claim by salvaging its patent rights, trade name, customer list and other general intangibles with the result that, except for a $70,000 mortgage on its real estate, the balance of Montco's claim is entirely unsecured. Montco's efforts to foreclose on the mortgage resulted in a settlement in the state court action. Montco's continued litigation with respect to a certificate of indebtedness which it improperly obtained and which was voided and Montco's objection to the reinstatement of the Chapter XI petition following the adjudication in bankruptcy culminated in an award of counsel fees to the estate arising out of such bad faith litigation.

For the legal services required in the numerous suits and for general legal work required to be performed on behalf of the estate, the trustee in possession obtained the court's approval to retain himself as attorney for the estate. Mr. Barr has applied for an allowance for his legal services and for reimbursement of expenses. Not unexpectedly, Montco objects to his fee application.

Additionally, consideration must be given to the application of Patterson, Belknap, Webb & Tyler, Esqs. who were retained by the trustee pursuant to authorization from the court to perform special legal services with respect to obtaining qualification of the debtor's pension plan with the Internal Revenue Service. An application for compensation was also filed by the trustee in possession for his statutory commissions.

## ATTORNEY FOR THE TRUSTEE IN POSSESSION

The time log of approximately 1,702.95 hours submitted by the attorney for the trustee does not reveal whether or not it represents contemporaneous time entries. Manifestly, it is mandatory that contemporaneous time records be kept by attorneys who seek to recover fees for the legal services rendered during the time in question. *New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983). However, at the evidentiary hearing in this matter it was made clear that the time log represented contemporaneous entries that were made on a daily basis by Mr. Barr who then incorporated this information into a computer printout at the end of each week. Therefore, the court is satisfied that the contemporaneous time record requirement has been met.

█ It was also adduced at the hearing that the attorney for the trustee at all times during his retention drew a clear distinction between those services which were performed qua trustee and those which were rendered in his capacity as attorney for the trustee. He performed administrative services on a daily basis as trustee in possession since April 29, 1977 and directed the overall operations of the debtor's business which was run by Stephen G. Glatzer, after the latter reassumed his office of president upon removing the previous management led by Rocco Scappatura. As trustee in possession, Harvey S. Barr is entitled to receive statutory commissions for his service. However, only those services actually requiring and utiliz-

ing legal skill are compensable by an award of attorney's fees. *In re Mabson Lumber Co.*, 394 F.2d 23, 24 (2d Cir.1968); *see In re First Colonial Corp. of America*, 544 F.2d 1291, 1298–99 (5th Cir.), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). The evidence in this case supports the conclusion that Mr. Barr accurately distinguished between those services performed by the trustee and those that were performed by him in his role as attorney for the trustee. The court was continuously involved in the numerous litigated matters in this case and well aware of the many appearances required by the trustee's attorney and the nature and extent of the services that were obliged to be rendered by counsel for the trustee. What remains for consideration is the measure of compensation for such services.

Former Bankruptcy Rule 11–31, which applied to cases under Chapter XI of the now repealed Bankruptcy Act, incorporated Bankruptcy Rule 219 and stated that reasonable compensation should be paid for services beneficial to the estate. The factors delineated in former Bankruptcy Rule 219(c) direct the court to give "due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors." The standard under the former Bankruptcy Act of 1898, which applies to this case, is one of reasonableness. In referring to this standard, a discerning treatise writer correctly observed:

> However, the application of that standard generally resulted in awards based upon a principle of economy. The notion of economy of the estate, which developed in the case law over many years, was incorporated into Bankruptcy Rule 219, adopted in 1973, which governed all applications for awards of compensation.

The principle of economy was often also tantamount to parsimonious allowances. The net effect was to discourage many able attorneys from engaging in the practice of bankruptcy law.

1 W. Norton, Bankruptcy Law and Practice § 13.30, at 13–49 to 50 (1981). The same treatise writer aptly noted that the only possible exception to the rule of economy that prevailed under the former Bankruptcy Act would be where all creditors are paid in full or in successful reorganization cases. 1 W. Norton, *supra*, § 13.11, at 13–16 n.6. Manifestly, the instant case involves a successful reorganization where all of the creditors may be paid in full.

■ The basic factors for consideration in ascertaining what would be a reasonable fee under certain circumstances are expressed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), which were generally referred to as the twelve "Johnson" factors.[1] These factors were thereafter cited with approval in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40, 48 n. 4 (1983) and in *Blum v. Stenson*, — U.S. —, — — —, 104 S.Ct. 1541, 1545–46, 79 L.Ed.2d 891, 898–99 (1984).

■ In applying these factors, the court has considered not only the time and labor required, namely approximately 1700 hours, but more importantly, the results obtained. The Second Circuit Court of Appeals sustained the trustee's position that a reinstated Chapter XI case could be achieved following an adjudication upon the heels of the original Chapter XI case, which was commenced by the debtor's ousted management. The trustee's attorney also successfully preserved the heart and soul of the debtor's assets, its patent rights and general intangibles, against Montco's

---

**1.** The twelve factors to be considered by the court in making an award of attorneys' fees are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717–19.

claim that Montco's lien covered all of the debtor's business. Additionally, the trustee's attorney successfully voided Montco's administrative priority claim represented by the certificate of indebtedness that Montco improperly obtained. The trustee's position was sustained in this court[2] and affirmed by the district court[3] and thereafter by the Second Circuit Court of Appeals.[4] The trustee's counsel also recovered for the estate counsel fees attributable to Montco's litigation intended to prevent the rectification of the improperly issued certificate of indebtedness. Hence, it is small wonder that Montco now objects to the trustee's application for compensation for these efforts. On the other hand, the debtor's president has stated that he regards the fee application to be reasonable and proper. Not only did the trustee's attorney save patent rights and general intangibles for the debtor,[5] he also skillfully and successfully litigated in this court the debtor's trademark and Lanham Act rights against out-of-state competitors.[6] The debtor's equity interest in its premises was also protected by counsel, who successfully negotiated a settlement of Montco's state court foreclosure action. In short, the trustee's attorney prevented Montco from wholly swallowing the debtor's business and then saved its vital pieces, either through litigation or negotiation, while staving off competitors from encroaching upon the remains. During this time the trustee and the debtor's management were able to turn the debtor around financially from a losing situation to a profitable business, whose products are endorsed by the Federal Aviation Administration. Meanwhile, in addition to appearing before Federal administrative agencies concerning federal regulations affecting the debtor's business, counsel for the trustee also shepherded the debtor's reorganization plan through the Chapter XI requirements and ultimately succeeded in obtaining an order of confirmation. Under the plan, the unsecured creditors will receive a minimum of 10.5% plus shares of stock which will pay 5% of the debtor's annual gross income until a 100% return is accomplished. Thus, the unsecured creditors, who would have received nothing had the debtor remained in straight bankruptcy following the original aborted Chapter XI case, may ultimately recover 100% on their claims. Surely, counsel for the trustee has cause for asserting that not only has he contributed towards conserving the estate, but that the results will be beneficial to the debtor and its creditors.

The trustee's counsel seeks a fee in the sum of $255,442.50, representing his customary charge of $150 per hour times 1702.95 hours of legal services logged. Obviously this sum is not available even if awarded in full, since the debtor has only about $45,000 of cash on hand. However, Mr. Barr has stated that he is willing to extend the collection of his fee over a period of five years from its award, and that the debtor's income during this period would amply provide the source for the required annual payments to creditors as well as the payment of his deferred compensation. Nevertheless, a portion of Mr. Barr's application includes legal services performed during the so-called bad faith litigation caused by Montco and for which this court has ruled that Montco should be responsible. As counsel for the trustee, Mr. Barr has calculated these services in the amount of $70,000, for which he has sought payment from Montco. After a series of hearings in this court and in the district court, the parties have agreed to settle this point with Montco paying Mr.

2. *In re Emergency Beacon Corp.,* 5 BCD 372, 19 CBC 362 (Bkrtcy.S.D.N.Y.1978).

3. *In re Emergency Beacon Corp.,* [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,480 (S.D.N.Y.1980).

4. *Montco, Inc. v. Barr (In re Emergency Beacon Corp.),* 666 F.2d 754 (2d Cir.1981).

5. *In re Emergency Beacon Corp.,* 23 U.C.C. Serv. (Callaghan) 766 (Bkrtcy.S.D.N.Y.1977).

6. *In re Emergency Beacon Corp.,* 13 B.R. 773 (Bkrtcy.S.D.N.Y.1981).

Barr the sum of $30,000. The proposed settlement was approved by the court as reasonable, notwithstanding the objection voiced by the debtor's president, Mr. Glatzer, who felt that the entire $70,000 should be paid by Montco, because the difference, namely $40,000, would then be included in Mr. Barr's application for payment from the estate. Thus, upon receiving $30,000 from Montco, Mr. Barr looks to the debtor for $225,442.50 ($255,442.50 minus $30,000) whereas the debtor's president believes that the proper and reasonable fee which the debtor is willing to pay should be $185,-442.25 ($255,442.50 minus $70,000).

The position that only the $30,000 which is to be paid by Montco should be subtracted from Mr. Barr's application is persuasive, since Mr. Barr performed compensable services for the debtor's benefit, notwithstanding his willingness to accept a reduced amount in settlement from Montco. However, the debtor's liability for the balance of the services performed by Mr. Barr, as attorney for the trustee, should be tempered by the fact that this court did not allow $150 per hour as a reasonable legal fee as far back as 1977, when Mr. Barr's retention was approved as attorney for the trustee in possession. Indeed, during a portion of this period, the allowable fee ranged from $125 per hour to $135 per hour. It was only in the last few years that this court was willing to recognize $150 per hour as a reasonable fee for the calibre of work and type of results produced in this case. Accordingly, applying the rate of $125 per hour until 1980 and employing the rate of $135 per hour for the years 1980 and 1981, with the rate of $150 applicable to all times thereafter, it is concluded that in light of all of the twelve "Johnson" factors, the attorney for the trustee is entitled to an award of $245,000, less $30,000 to be paid by Montco, for a net fee of $215,000 to be paid by the debtor, which sum is found to be fair and reasonable. This figure also contemplates that Mr. Barr will be required to perform additional legal services in this case, because there is pending a proceeding under section 60d of the former Bankruptcy Act against the attorney who was retained by the debtor's ousted management to file the original Chapter XI petition.

Having previously received an interim allowance of $26,475.00, the attorney for the trustee is entitled to be compensated for the difference, namely, $188,525, together with disbursements of $584.80, which were properly incurred and should be reimbursed.

## TRUSTEE IN POSSESSION

As trustee in possession, Harvey S. Barr seeks a commission of $74,240.60, pursuant to Section 48(c)(2) of the Bankruptcy Act of 1898, as amended. This section provides that a trustee who conducts the business of the debtor may receive up to twice the maximum statutory commission. Based on the receipt of a gross sum of $3,670,529.80, the trustee properly computes the maximum double commission to be $74,240.60. Mr. Barr became the trustee in possession when the erstwhile Chapter XI debtor was adjudicated bankrupt on March 11, 1977. He had previously been designated a standby trustee on April 20, 1976. When the debtor's reinstated Chapter XI petition was filed with the court's approval on April 29, 1977 Mr. Barr, as trustee in bankruptcy, then became the trustee in possession. It was his task to hire management for the debtor and to supervise its business operations. Mr. Barr retained Stephen G. Glatzer to manage the daily operations. Mr. Glatzer had been president and a major shareholder of the debtor before he was ousted from management by the group that was headed by Rocco Scappatura, the debtor's former vice president. It was the Scappatura-led management that ran the debtor into Chapter XI originally. The trustee and Mr. Glatzer then combined their efforts and skillfully managed the debtor's business so as to turn it around from a losing situation to a going concern operating on a profitable basis. Their ingenuity and determination knew no limits. Each challenge was handled professionally to the benefit of the estate and its creditors.

For his highly capable and successful efforts Mr. Barr is entitled to be awarded the maximum double commission of $74,240.60. Mr. Barr has agreed, as in the case of his capacity as attorney for the trustee in possession, to defer his statutory commission over a five year period. In light of the debtor's cash position, this deferral is both salutary and necessary.

### SPECIAL COUNSEL

The firm of Patterson, Belknap, Webb & Tyler, special counsel to the trustee in possession, has applied for a fee of $61,092, together with disbursements of $2113.55. This firm was retained by the trustee in possession with the approval of the court on February 15, 1980 as special counsel with regard to the continuation of the Emergency Beacon Corporation Profit Sharing Plan. The trustee in possession had obtained court approval to assume control over the pension plan and authorization for the removal of all trustees and the administrative committee members who had not previously been removed or resigned. The trustee in possession was authorized to appoint himself as trustee of the pension trust and assumed responsibility for the administration of the pension plan. The Patterson firm served the trustee as special counsel to obtain a determination that the pension plan and trust, as restated in accordance with the recommendations of the Patterson firm, continued to be qualified and tax-exempt under Sections 401(a) and 501(a) of the Internal Revenue Code. The services furnished by special counsel resulted in the desired tax-exempt determination. Although the original principal amount of the pension fund was about $70,000, the figure now approximates $170,000 because of accrued interest.

■ It has been pointed out that a fee of $61,092 is disproportionate to the size of the fund in question. To be sure, had there been no internal conflict between the debtor's former management and its present management, the Patterson firm would have been able to perform its legal services much more expeditiously and less expensively. However, cooperation was not forthcoming from those who had access to the required information and figures, with the result that the Patterson firm had to reconstruct much of what was necessary to prepare the necessary papers for the favorable tax-exempt determination. Certainly this firm should not be faulted for doing what was necessary to accomplish the project for which they were retained. Their services were performed in a highly professional and competent manner and they accomplished the desired results. However, their billable rates for partners commenced at $165 per hour and increased during the years involved to as high as $225 per hour. It appears that the sum of $150 per hour (the maximum amount allowed to counsel for the trustee in possession) is a fair and reasonable figure in the circumstances of this case that should govern the specialized services that this firm performed. It is also noted with approval and commendation that many hours of legal services were performed by associates and paralegals so that by applying the $150 per hour rate for the partners' services the applied for fee of $61,092.00 is reduced to $59,844.00. The latter figure is fair and reasonable and should be paid from the pension plan funds, rather than the debtor's estate, because the legal services performed by the Patterson firm directly benefitted the employees covered by this plan. It is also found that the Patterson firm should be reimbursed to the extent of $1648.25 for expenses which were properly incurred. Such reimbursement should similarly be paid from the pension plan funds.

SETTLE ORDER ON NOTICE.